STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
LEROY H. HALL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division.

Argued April 29, 1963—Decided June 10, 1963.

Before Judges Price, Sullivan and Lewis.

*Mr. John J. Gaffey,* assigned attorney, argued the cause for defendant-appellant.

*Mr. C. William Caruso,* Assistant Essex County Prosecutor, argued the cause for plaintiff-respondent (*Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney; *Mr. Caruso,* of counsel and on the brief).

The opinion of the court was delivered by

Price, S. J. A. D. On the basis of a jury verdict defendant Hall was convicted of armed robbery in violation of *N. J. S.* 2A:141–1 and *N. J. S.* 2A:151–5. One James Culver was also indicted, but the State moved the trial against Hall only and, as hereinafter set forth, called Culver as a witness for the State.

On this appeal defendant Hall presents only one ground for reversal which we find meritorious. It concerns the legal propriety of the extent to which the trial court permitted the State to go, in "neutralizing" testimony of Culver, alleged by the State to be an "adverse" witness, and as to whose testimony at trial the State claimed "surprise."

The record on which the appeal is based reveals that on February 4, 1961, at about 9 p. m., Edith LaMotta, who with her husband Casper LaMotta operated a luncheonette and candy store in the City of Newark, testified that she was accosted in the store by Culver, armed with a revolver and

with his head covered by a hooded mask. She said that he entered through one of the two doors affording access from the street into the store, put the gun "into [her] stomach" and said: "This is a stickup." She related that at gun point Culver forced her to enter a kitchen in the rear of the building from which room he told her not to "move." That area of the building constituted the portion of the structure where she, her husband and daughter resided.

Mrs. LaMotta further testified that as she, obedient to Culver's command, moved toward the kitchen, she had to make a turn around a counter; that as Culver followed her holding "the gun in [her] back" she observed defendant Hall looking into the store through a window, saw him enter the store and go to the cash register. She screamed and her husband emerged from the kitchen and, although ordered by Culver to "get over there," ran from the side door and "called for help." After she entered the kitchen she saw Culver run from the building. She "stood a few minutes," went directly to the cash register, and found it empty. She said that $125 had been taken therefrom. The police arrived promptly.

Despite the fact that Mrs. LaMotta, as above set forth, testified that Culver was masked at the time of the robbery, she identified both Culver and Hall in a subsequent police line-up and at trial as the persons who committed the crime. She testified that she was able to identify Culver because "his eyes were red." She said that Hall was about six feet, six inches tall and that Culver was "five-foot something."

Casper LaMotta testified that at the time of the robbery he was in a bathroom located in the rear of the store. As he emerged from that room he saw "a short fellow," wearing a mask, pointing a gun "in [his wife's] stomach." Casper ran to the street shouting "Holdup," and saw two men run down the street. He said, "the tall guy run out first and then the guy with the gun ran out last." He was unable to identify either of the men.

A detective of the Newark police department testified that as the result of investigation by the police department, Culver

was taken into custody. He implicated Hall. The detective further said that in both oral and typewritten statements Culver related to the police the details of the formation of the plan to rob the LaMotta store, the execution of the robbery by Hall and him, and the subsequent equal division of the stolen money between them. He said that the money was divided in Hall's room in a house to which they went immediately after the robbery.

The detective further testified that Culver's recital of the events, the preparation of the written statement, Culver's reading of the statement aloud, and his subsequent execution thereof, took place in Hall's presence at police headquarters; that although the latter remained "mute" during the questioning, he signed Culver's statement "as the first witness." On cross-examination the detective admitted that earlier in the day Hall had repeatedly denied having anything to do with the robbery and at no time admitted that he had participated in it in any way.

Following the testimony of Mr. and Mrs. LaMotta and the police detective, the State called Culver as a witness. Under direct examination he said that one Tom Berry, and not defendant Hall, was with him during the robbery aforesaid. Thereupon the State pleaded surprise and, at the request of defendant's counsel, the propriety of that plea was argued in the absence of the jury. The trial judge honored the State's plea and, on recalling the jury, permitted the State to interrogate Culver in attempted neutralization of his testimony that Berry instead of defendant joined him in the commission of the crime. Such interrogation was extensive and involved a verbatim reading of most of the written statement which Culver had given to the police. He repudiated all references to Hall therein, reacknowledged that he (Culver) had committed the robbery, but insisted that he was accompanied by Berry and not by Hall. He denied that he had read the statement aloud in Hall's presence or that he had orally implicated Hall either in or out of his presence.

At the conclusion of Culver's examination the trial judge made the following statement to the jury:

"I must instruct you that the cross-examination on the part of the State of the last witness you heard, that is, James Culver, was only permitted for the purpose of neutralizing his testimony with respect to the implication of Berry and only offered for the purpose of neutralizing that testimony, so that you cannot consider the testimony of that witness to any greater extent, that is, the testimony on cross-examination, to any greater extent than in neutralizing his testimony on direct that Berry was his assistant or accomplice at the scene rather than Thomas Hall. You cannot consider any of his testimony on cross-examination for the purpose of implicating or having any weight so far as the guilt of Leroy Hall is concerned."

After certain further incidental testimony the State rested and, following the denial of a motion by defendant's counsel for a judgment of acquittal, the defendant presented his case.

Testifying in his own defense, Hall categorically denied that he participated in the robbery, asserting that on February 4, 1961 he was at home from 6 P. M. until the next morning. His mother, sister and brother-in-law corroborated his "alibi." Hall also denied that Mrs. LaMotta had actually identified him in the police line-up, and contradicted the detective's testimony that Culver's oral and written statements were made and taken at police headquarters in his presence. His explanation for the presence of his signature as a witness on the Culver typewritten statement was as follows:

"Q. I show you this statement which has been referred to several times during the earlier part of the day and I ask you if this is your signature on this statement. A. Yes, sir.
Q. And this is the statement of whom? A. James Culver.
Q. Do you remember signing this? A. Yes, sir, I remember.
Q. Where did you sign it? A. In a prison cell.
Q. Did you read it before you signed it? A. No, sir.
Q. Under what circumstances did you sign it? A. He [the detective] told me that the boy had involved me in a holdup and I told him that I did not participate in any holdup. Well, he said, 'Well, this is not a statement saying that you did it.' He said, 'This can't hold you at all.' He said, 'Just sign here. This is just to verify the fact that you acknowledge the fact that we have adequate reason to hold you, that's all.'
Q. Did you read it? A. No, sir."

Following the close of defendant's case the State called Berry as a witness. Under interrogation by the assistant prosecutor (not the same attorney who argued the instant appeal on behalf of the State), Berry testified that he had known Culver many years and had been acquainted with Hall for "about six years"; that he had not been with Culver "on February 4, 1961" and in fact had not seen him on that day. He was then asked whether he went "with Culver to La-Motta's Luncheonette." In response to objection to the question by defendant's attorney, on the ground that he felt that the question had in essence been answered, the following occurred:

"THE COURT: That's so and also there has been a statement, prior testimony of Culver, saying that this witness, Thomas Berry, was with him, at the time the luncheonette was held up. Now, if that's an accusation of a crime and if you are asking this defendant [sic] then he has a right to be advised of his constitutional right not to answer. Now, what's your purpose in asking that?

MR. DIAMQND: *This is in furtherance of the neutralization, your Honor.*

THE COURT: *You are attacking the testimony of Culver? This is a further offer to neutralize the testimony of Culver?*

MR. DIAMOND: *And to be considered by the jury in their deliberations.*

THE COURT: *Only insofar as it relates to the neutralization of Culver's testimony.*

MR. DIAMOND: *Yes, sir, that's correct.*

THE COURT: *I will permit it for that purpose,* but, Mr. Berry, you have a right under the United States Constitution and the Constitution of the State of New Jersey to refuse to answer any questions which relate to an accusation of your participating in an alleged holdup on February 4, 1961. Do you understand that?

THE WITNESS: Yes, sir, I understand.

THE COURT: All right. Now, if you refuse to answer the question you may simply indicate, 'I refuse to answer the question on the ground that it might tend to incriminate me.'

Q. Did you rob LaMotta's Luncheonette with Culver? A. No, sir.

MR. KESSLER: If your Honor please, I submit that this question has been answered by the first question that the Prosecutor asked of this witness—'Were you with him on February 4th?' and he said, 'No,' and there is an impossibility of doing anything on February 4th with Culver.

THE COURT: *But this is more specific. I will permit it.*

Q. Did you rob LaMotta's Luncheonette with Culver on February 4, 1961? A. No, sir. I don't even know where it is.

Q. Do you know of any reason why Culver would say that you were with him? A. Yes, I do.

MR. KESSLER: If your Honor please, I object to this. I think that this calls for a state of mind. I don't think that's a proper question.

MR. DIAMOND: I am not asking for a state of mind. *I am asking for facts*, your Honor.

THE COURT: I will permit it.

Q. You do know why he would say that? A. Yes, I do.

Q. Why? A. Because I owe him money.

Q. How much do you owe him? A. $650." (Emphasis supplied)

Defendant charges that the trial court's action in permitting Berry to testify on rebuttal as aforesaid in further attempted "neutralization" of Culver's testimony, was erroneous. Although at trial, as above noted, the specific objection to such testimony, now advanced on appeal, was not expressed, defendant's present counsel asserts that defendant was so prejudiced by the testimony elicited from Berry that we should recognize the impropriety of the permitted interrogation under the plain error rule (*R. R.* 1:5–1(a) ; 2:5). We agree.

No such method of "neutralizing" testimony can legally be employed. The precise limits of the proper procedure were set forth in *State v. Perillo,* 18 *N. J. Super.* 549, 551 (*App. Div.* 1952) :

"If a party is surprised by harmful, adverse testimony given by his own witness in conflict with a prior statement which the witness has made, he may attempt to neutralize such testimony by questioning the witness about such prior statement. *State v. Bassone,* 109 *N. J. L.* 176 (*E. & A.* 1932) ; *Stappenbeck v. Jagels Fuel Corp.,* 131 *N. J. L.* 215 (*E. & A.* 1944). Or the contradictory statement may be proved by other witnesses. *State v. D'Adame,* 84 *N. J. L.* 386, 398 (*E. & A.* 1913)."

In *State v. Baechlor,* 52 *N. J. Super.* 378, 389 (*App. Div.* 1958), the following appears :

"When a party is surprised by harmful adverse testimony given by his own witness in conflict with a prior statement which the witness has made, he may attempt to neutralize or discredit this evidence

by showing by other witnesses a contradictory statement on a previous occasion. This is not to prove the truth of such contradictory statement, but to neutralize or withdraw the effect of the unexpected testimony. Since the prior statement is not used assertively in place of his statement on the witness stand, but merely to wipe the slate clean, it is not hearsay testimony. The court must instruct the jury that the receipt of such testimony is purely for the purpose of neutralizing the prior testimony and that they must disregard it as tending to prove the truth of the facts which it asserts."

In *State v. D'Adame,* 84 *N. J. L.* 386 (*E. & A.* 1913), it appeared that the State was surprised by testimony given by one of its witnesses, which testimony "was exactly contrary to what it was endeavoring to prove, *viz.,* the guilt of the defendant." Under such circumstances it was held that the State "had the right, if it could do so, to neutralize the effect of such evidence by proving the self-contradictory statements of the witness to show that such evidence was untrustworthy." The court said (84 *N. J. L.,* at *p.* 395):

"Under similar circumstances in *State v. Johnson,* 44 *Vroom* 199, the Supreme Court held that the state might ask its witness if he had not on a previous occasion, *i. e.,* before the grand jury, made a statement contradictory of his present testimony. Obviously this could only be done because of the 'surprise' occasioned by the unexpected testimony, and to 'discredit' its effect. The previous statement, not made in the presence of the defendant, and not subject to cross-examination by him, could not be evidential against him. Its admission depended entirely upon its effect as neutralizing the witnesses' unexpectedly adverse testimony, and for this purpose we think it might be proved as well by the testimony of other witnesses as by the admission of the witness in question.

Under this view when, to the 'surprise' of the state, Knight impliedly testified (by failing to identify him) that defendant was not the guilty party, the state had the right to neutralize or 'discredit' this evidence by showing by other witnesses a contradictory statement by Knight on a previous occasion. This was not to prove the truth of such contradictory statement, but to neutralize or withdraw the effect of the unexpected testimony."

To the same effect see *State v. Perillo, supra,* 18 *N. J. Super.,* at *p.* 551.

 In the case at bar the State was justified in interrogating Culver in its aforesaid attempt to neutralize his

"adverse" testimony by questioning him about his prior statement. Indeed, the fact that Culver had given a contradictory statement might have been proved "by other witnesses" if available. *State v. D'Adame, supra*, 84 *N. J. L.*, at *p.* 395. However, we hold that Berry's aforesaid testimony was not admissible on the theory of neutralization of the testimony given by Culver. The harmful effect of Berry's testimony was apparent. Such testimony had nothing to do with neutralization. Despite the fact that, as above noted, the assistant prosecutor offered the testimony of Berry "in furtherance of the neutralization" and the trial court received it "for that purpose," it is clear that its obvious effect was to indicate the truth of Culver's original statement given to the police that he, Culver, and defendant Hall had committed the robbery. We find that the error in the admission of such testimony is to be recognized by us under the plain error rule; that it was so prejudicial that the reversal of the defendant's conviction must follow. *State v. Corby*, 28 *N. J.* 106, 108 (1958).

The judgment of conviction is reversed and the case remanded for a new trial.