158 N.J. Super. 517 (1978)
386 A.2d 880
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT SINGLETON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 1977.
Decided April 19, 1978.
*520 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Philip A. Kahn, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Benjamin D. Leibowitz, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant Robert Singleton was convicted by a jury of the murder of Willie Williams in the second degree while armed. He was sentenced to State Prison for 18 to 20 years for second degree murder and to a concurrent term of 3 to 5 years for the armed feature. Both sentences were to be served consecutively to a sentence defendant was then serving for a violation of parole. He appeals.
According to the State's proofs, defendant killed Williams by shooting him with a .38-caliber handgun following an altercation between Williams and defendant's brother, Charles Singleton. On January 25, 1975, at about 3 P.M., Edith Williams, the slightly retarded 14-year-old daughter of the murder victim Williams, was involved in a fight with Charles Singleton while she was washing clothes in the neighborhood laundromat. The local police were called and broke up the fight, instructing Edith to go home. Edith was crying when she arrived home and told her mother and father what had happened. Her father left the house with her and three of *521 his other children to look for Charles, whom he eventually found in a delicatessen. Williams entered the delicatessen and became involved in a fight with Charles while the children remained outside. During the course of the fight Williams took a knife from his pocket and menaced Charles with it. As a result Charles ran into the backroom of the store. The owner immediately demanded that Williams leave and he complied. Williams returned to his children. Then Gregory Singleton, another brother of defendant, hit him on the head with a bat, threw the bat at him and ran off. Williams and his children started to return to their home, when defendant accosted them. According to Edith, defendant told Williams "you ain't going to live for long." Thereupon defendant took a handgun out of his jacket and shot Williams four times in front of his children. Dr. Randolph A. London, the Assistant Hudson County Medical Examiner, who performed the autopsy, testified that Williams was shot in the abdomen, the chest, the arm and back. The bullet which entered his chest perforated his heart, causing almost immediate death.
Defendant does not contend on this appeal that the verdict was against the weight of the evidence. Rather, he seeks a reversal of his convictions and a remand for a new trial on the grounds hereinafter discussed. We have addressed all of defendant's contentions and find them to be without merit.

I
There is no merit in defendant's claim that the trial judge erred in ordering the New Jersey Parole Board to relinquish the transcripts of his parole revocation hearing. While defendant was on parole, he was arrested and charged with the Williams murder. A parole revocation hearing involving the murder charge against him was held. At that hearing defendant, his lawyer and his sister testified. Prior to the trial of the murder indictment the State served subpoenas duces tecum upon the chairman and the executive director of the Parole Board directing them to produce the *522 transcripts or records of the parole revocation hearing. The Parole Board immediately moved to quash the subpoenas on the ground that the requested transcripts and records were privileged from discovery as official information pursuant to Evid. R. 34 (N.J.S.A. 2A:84A-27). The Parole Board argued that, even though the transcript had been made available to defendant's attorney, it was confidential under N.J.S.A. 30:4-123.31 and N.J.A.C. 10:70-12.2, and its disclosure would be harmful to the public interest. The trial judge disagreed and ordered the production of the transcripts. The transcripts were produced for the trial and were used by the State to cross-examine defendant's sister.
We are entirely satisfied that the trial judge properly ordered the production of the transcripts of the parole revocation hearing. The order of the Law Division denying the motion to quash the subpoenas duces tecum is affirmed substantially for the reasons expressed by Judge Walsh in his written opinion reported at 137 N.J. Super. 436 (Law Div. 1975).

II
We also find no merit in defendant's claim that the trial judge mistakenly exercised his discretion by calling Edward Horne, an eyewitness to the shooting, as the court's own witness. Horne originally gave a statement to the police in which he stated that he was an eyewitness to the shooting by defendant and that he later learned the murder weapon was in defendant's sister's apartment. Thereafter he was interviewed by defendant's investigator, Robert Ellis, Jr. Horne told Ellis that his statement to the police was true except he never mentioned the location of the murder weapon. However, when Horne testified at the suppression hearing at the behest of defendant, he recanted his prior statement to the police. He denied seeing the shooting or the weapon. He maintained that he never told the police anything about the shooting or the gun used. When confronted with his signed statement, he either denied giving the police most of the information contained therein or *523 could not remember what happened. He also denied telling the State's investigator that he was threatened and warned not to speak about the incident. When Horne appeared at the trial as a court witness, he identified defendant as Williams' murderer and confirmed the truthfulness of his prior police statement to this effect.
We are entirely satisfied that under the circumstances presented the trial judge properly exercised his discretionary powers by calling Horne as a court witness, thereby enabling the State, which was surprised by the recantation, and defendant to cross-examine the witness. See McCormick, Evidence (2 ed. 1972), § 8 at 12-14. See also, State v. Andreano, 117 N.J. Super. 498, 502 (App. Div. 1971).
While there may be some technical question as to the propriety of permitting the State to call defendant's investigator Ellis as its witness to testify to his conversation with Horne concerning Horne's prior statement to the police (see State v. Robinson, 139 N.J. Super. 58, 62 (App. Div. 1976)), the admission of such testimony was harmless, particularly in view of the fact that Horne's statement was marked in evidence at the trial and utilized by the State to cross examine him.
Beyond this, in light of the overwhelming evidence of guilt neither "error" alleged by defendant reached dimensions "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). See also, State v. Bankston, 63 N.J. 263, 273 (1973).

III
Defendant further contends that reversible error was committed by the trial judge's failure specifically to call to the jury's attention the alleged violation of the sequestration order by Detective Devine and its bearing upon his credibility. Horne and his wife met Detective Devine in the courthouse while the trial was in progress. Devine did not know that Horne had already testified at the suppression hearing on the matter and that the court had entered *524 a sequestration order. Horne and his wife asked Devine if he could help get bail for their son then in jail on an entirely unrelated matter. Detective Devine took Horne and his wife to the prosecutor's office and spoke with an investigator. During the course of the conversation Horne told Devine that he had recanted his prior statement to the police because of a mutual friend of his and defendant's father. The assistant prosecutor on the case came into the office. Horne related to him his statements to Devine and the investigator. They sought to place Horne before the grand jury to repeat his statements to them. Neither Horne's already adduced nor his prospective trial testimony was discussed. The trial judge defendant's motion to exclude Devine and Horne from testifying. Instead he entered an order directing that neither Devine nor any other witness refer in their testimony to any threats made to Horne.
Our review of the trial record convinces us that the violation of the sequestration order, at most, was merely technical. It was not the State's fault. There was no showing of prejudice to defendant. Under the circumstances we are satisfied that the remedial action taken by the trial judge was appropriate. Cf. State v. Tillman, 122 N.J. Super. 137, 143-144 (App. Div.), certif. den. 62 N.J. 428 (1973).

IV
Defendant further contends that the trial judge erred in denying his motion to suppress the murder weapon seized by the police pursuant to a search warrant for his sister's home. Defendant essentially argues that the affidavit was insufficient to establish probable cause for the issuance of the warrant. We disagree and affirm the order denying defendant's motion to suppress. The affidavit recites that Horne, an eyewitness to the murder of Williams, identified defendant as the person who fired three shots into the body of Williams, thereby causing his death. Horne traced defendant's movements while holding a revolver and compared defendant's position to that of the victim. A fair reading of *525 the affidavit also indicates that Horne told affiant that defendant's father stated that the murder weapon was hidden in his daughter's apartment.
When a challenged search is made under the authority of a search warrant, the warrant is presumed valid and the burden of establishing its invalidity rests upon the defendant. State v. Mark, 46 N.J. 262, 273 (1966); State v. Gaudiosi, 97 N.J. Super. 565, 571 (App. Div. 1967). The resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); State v. Perry, 59 N.J. 383, 393-394 (1971). In State v. Kasabucki, 52 N.J. 110 (1968), our Supreme Court, in defining the standard to be followed by the trial judge in evaluating the affidavits submitted in support of a search warrant for probable cause, in part stated:
When a police officer seeking a search warrant presents the basis therefor in affidavit form to a judge for evaluation on the issue of probable cause, the judge's approach must be a practical and realistic one. The officer's statements must be looked at in a common sense way without a grudging or negative attitude. There must be an awareness that few policemen have legal training and that the material submitted to demonstrate probable cause may not be described with the technical nicety one would expect of a member of the bar. Moreover, the judge should take into account the specialized experience and work-a-day knowledge of policemen. State v. Contursi, 44 N.J. 422, 431 (1965). The facts asserted must be tested by the practical considerations of everyday life on which reasonably prudent and experienced police officers act.... [at 117]
See also, United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. 741; State v. Schumann, 156 N.J. Super. 563 (App. Div. 1978); State v. Kurland, 130 N.J. Super. 110, 113-114 (App. Div. 1974).
Viewed from a common sense, nontechnical positive approach, we agree with the trial judge that the affidavit was *526 sufficient for the issuing municipal court judge to find probable cause. We must not lose sight of the fact that
* * * When information is provided by a cooperative citizen, or an informant not from the criminal milieu, there is less need for establishing credibility of the informant. An ordinary citizen who reports a crime has been committed in his presence stands on a much different ground than a police informer. He is a witness to a crime who acts with an intent to aid the police in law enforcement because of his concern for society. He does not expect any gain or concession in exchange for his information. A citizen-informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he had supplied. We hold that when information is provided by a citizen-informer his prior reliability need not be established as a prerequisite for issuance of a search warrant. * * * [State v. Kurland, 130 N.J. Super. at 114-115]

V
The trial judge did not mistakenly exercise his discretion by refusing to compel Detective Devine to disclose the identity of the informer who supplied the names of Horne and defendant's father as witnesses of the crime. The informer did not participate in the crime, nor was he an essential witness on an issue basic to the case. The disclosure of his identity was not necessary or essential to assure a fair determination of the issues. Evid. R. 36; N.J.S.A. 2A:84A-28. See State v. Milligan, 71 N.J. 373, 387-390 (1976). See also, State v. Oliver, 50 N.J. 39 (1967).

VI
Defendant argues that the comments of the prosecutor in his summation concerning the nonproduction of witnesses constituted reversible error. He claims that the prosecutor's comments tainted the jury's evaluation of the testimony by shifting the burden of proof to defendant.
*527 Apart from the fact that we find the prosecutor's comments on the nonproduction of witnesses not to be improper (see State v. Gosser, 50 N.J. 438, 452-453 (1967), cert. den. 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968); State v. Sinclair, 49 N.J. 525, 548-549 (1967)), the trial judge sustained defendant's objection thereto. The judge commented that "[t]he defendant is presumed innocent. He doesn't have to prove anything. The State has the burden of proof beyond a reasonable doubt." Moreover, the trial judge again instructed the jury on this fundamental principle, reminding them of the court's similar instructions during the prosecutor's summation. We are convinced that the prosecutor's remarks, of which defendant now complains, even if improper, were not of such a nature as to have been clearly capable of producing an unjust result. R. 2:10-2.

VII
We find no error, no less plain error, in the trial judge's charge on the prior identification of defendant by the murder victim's three children. We are satisfied that the instruction on the issue of identification was entirely proper. It is in accordance with the identification charge suggested by the New Jersey Supreme Court Committee on Model Jury Charges  Criminal, § 4.180 (June 30, 1972).

VIII
On the redirect examination of Detective Devine the trial judge properly permitted testimony that he obtained a warrant for defendant as a material witness on January 27, 1975, prior to February 1975 when defendant went to police headquarters to discuss the case. This testimony was both relevant and material and tended to refute defendant's claimed voluntary cooperation with the police prior to his arrest. The trial judge did not mistakenly exercise his discretion.

*528 IX
Finally, defendant claims that the aggregate effect of the alleged errors was to deprive him of a fair and impartial trial, relying on State v. Orecchio, 16 N.J. 125 (1954). We are satisfied from our review of the whole record that defendant was afforded a fair trial and that the trial judge did not commit any error warranting reversal of his convictions.
Affirmed.