162 N.J. Super. 47 (1978)
392 A.2d 210
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACK ROSS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 9, 1978.
Decided August 21, 1978.
*49 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Ms. Marian B. Copeland, designated counsel; Ms. Yvette Weiss on the brief).
Mr. John J. Degnan, Attorney General, attorney for respondent (Ms. Susan W. Sciacca, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
After a trial by jury defendant was found guilty of the first degree murder of Charles Arthur Parsons while armed with a revolver, possession of a revolver without a permit to carry it, in violation of N.J.S.A. 2A:151-41, and possession of a revolver without a permit to acquire it, contrary to N.J.S.A. 2A:151-32. Defendant was sentenced to life imprisonment in the New Jersey State Prison for the murder; a concurrent term of three to five years in the New Jersey State Prison for being armed; two to three years consecutive to the life sentence for possession of a revolver without a permit to carry and a one to two-year concurrent term for possession of a revolver without a permit to acquire.
*50 On this appeal defendant's primary contention is that the trial judge grossly abused his discretion and denied him due process in calling four witnesses as the court's witnesses, thus permitting the prosecutor to circumvent the strictures of Evid. R. 20 and Evid. R. 63 (1) (a).
The unusual circumstances which prompted the trial judge to call four witnesses as court's witnesses were briefly as follows. On the evening of August 24, 1973 the victim, Charles Arthur Parsons was found lying in the hallway of an apartment building. He had been shot and was pronounced dead on arrival at the hospital. The police traced a trail of blood back to the apartment of Cecil Hill, the girlfriend of the victim and the former girlfriend of defendant. At the trial, after the jury was selected and sworn but before the openings were made, the prosecutor requested the judge to call the four witnesses as court witnesses. He represented to the judge that Cecil Hill had given statements which conflicted as to her knowledge of the incident and the presence of defendant on the scene. Margaret Ross, who lived in the same building as Cecil Hill and is defendant's sister, gave a statement that she never saw defendant at the scene. She refused to keep an appointment with a prosecutor's investigator. Felicia Ross, Margaret's daughter, picked out a picture of defendant and said that he was the man who came into the apartment after Cecil Hill with a gun. Shortly before trial Felicia was interviewed in the prosecutor's office in the presence of her mother and the child grinned and said she had no recollection of what happened. Welton Hill, the son of Cecil Hill, at first told the police that Pee Wee, the defendant, shot the victim with a firecracker. Before trial Cecil Hill refused to allow the prosecutor to interview Welton and refused to be interviewed herself.
Pursuant to Evid. R. 8, the trial judge, out of the presence of the jury, heard the testimony of the four witnesses and five police officers as to the statements that had been given. Following the hearing the judge found that the witnesses *51 were all in some way or other closely related to defendant by blood or association, that they were all physically present at the time and in the area where the incident occurred and were all basically hostile to the State's position. In the interest of producing all of the vital facts before the jury, he determined that the witnesses would be called as court witnesses.
After the openings were concluded the judge announced to the jury that Cecil Hill was called as a court's witness, that neither side vouched for her credibility and that what weight was to be given to her testimony was up to it. The Judge participated in the interrogation of the witness only minimally. The essential examination was by the prosecutor and defense counsel. During the course of the prosecutor's examination of Cecil Hill two statements she had made to police were admitted as substantive evidence on the authority of State v. Provet, 133 N.J. Super. 432 (App. Div. 1975), certif. den. 68 N.J. 174 (1975), and Evid. R. 63(1) (a). She was later called as a witness for the defense. Each of the other court witnesses was examined in a similar manner and questioned about his or her prior statements. Two of the witnesses, Welton Hill and Margaret Ross, were also called as defense witnesses.
Evid. R. 63(1) (a) and Evid. R. 20 provide that a prior inconsistent statement may be admitted when offered by the party calling the witness, only for the purpose of neutralization and only if the judge finds that the party offering the statement was surprised. Such a restrictive approval to the use of prior inconsistent statements is not required as a matter of federal constitutional law. California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The rule has been criticized and is the subject of a proposed change by the Supreme Court's Committee on Criminal Practice. 101 N.J.L.J. 437 (May 4, 1978). It is clear that when a party other than the party calling the witness offers a prior inconsistent statement in evidence, it is admissible as substantive evidence. State v. Provet, supra.
*52 Here the action of the trial judge in calling the witnesses as court witnesses enabled the State to introduce the prior inconsistent statements as substantive evidence. Such an action is not in itself improper, State v. Singleton, 158 N.J. Super. 517 (App. Div. 1978); State v. Andreano, 117 N.J. Super. 498, 502 (App. Div. 1971); McCormick, Evidence (2 ed. 1972), § 8 at 12-14; Annotation, 67 A.L.R.2d 540; 81 Am. Jur.2d, Witnesses, § 3. So long as the judge does not assume the role of an advocate and maintains an atmosphere of impartiality such an exercise of sound discretion for the purpose of preventing a miscarriage of justice under the law will not be disturbed. Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 132 (1958); Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 547-550 (App. Div. 1960), certif. den. 33 N.J. 387 (1960), mod. 64 N.J. Super. 1 (App. Div. 1960). Our review of the record indicates that the trial judge played a minimal role in the interrogation of the witnesses, was scrupulously impartial and made it clear to the jurors that the assessment of the credibility of the testimony was their function. Thus we find no mistaken exercise of discretion. The judge did not interfere with the role of the jury in assessing the credibility of the witnesses. Cf. United States v. Karnes, 531 F.2d 214 (4 Cir.1976).
Defendant also contends that the trial judge committed plain error in allowing the State to present evidence of the defendant's possession of a .38-caliber pistol subsequent to the murder. No objection to the introduction of the evidence was raised at the trial. Reference to the later possession was made to counter defendant's testimony that he did not own a gun and had never had one in his hand since he left the South. On cross-examination the prosecutor questioned defendant about the subsequent possession of the gun and on rebuttal the State offered the testimony of a detective to whom defendant admitted possession of the gun. The judge amply cautioned the jury to consider the testimony solely for the purpose of testing the defendant's *53 credibility. We find no error and, necessarily, no plain error. The testimony was properly admitted to contradict a specific factual assertion made during defendant's case. State v. Provoid, 110 N.J. Super. 547, 557 (App. Div. 1970).
Judgment affirmed.
ANTELL, J.A.D. (dissenting).
By its decision the majority validates a conviction which rests entirely upon hearsay evidence in the form of out-of-court declarations made by Cecil Hill, her five-year-old son, Welton, and nine-year-old Felicia Ross. It is not a case, as in State v. Chaney, 160 N.J. Super. 49 (App. Div. 1978) and State v. Singleton, 158 N.J. Super. 517 (App. Div. 1978), where the courts' witnesses gave their incriminating testimony from the stand and, in the latter case, where the conviction was additionally supported by "overwhelming evidence of guilt." The statement of Cecil Hill was in writing, those of the children were oral. During the trial Hill categorically denied the truth of her out-of-court statement, and the children merely testified that they could not say whether theirs were true. Nevertheless, the prior statements of all were received for the truth of the highly incriminating facts therein stated. There can be no doubt that this was the only purpose of calling them as court's witnesses.
The sophistry on which this most uncommon record was prepared is that since the trial judge called the declarants as the court's witnesses the State could not be regarded as "the party calling the witness" within the meaning of Evid. R. 63(1) (a). Thus, the admissibility of the prior statements were held not subject to Evid. R. 20 which would otherwise limit the use of the statements to neutralization purposes.
Recognizing that the "court's witness" appellation does not alter underlying realities, the majority justifies its result by noting that the rule excluding as substantive evidence prior inconsistent statements offered by the proponent of the witness-defendant has been criticized by the *54 Supreme Court Committee On Criminal Practice, and that such use of these statements has been adjudged not to violate federal constitutional standards under California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Nevertheless, the very premise of the Supreme Court Committee report is that under existing law such extrajudicial statements are excluded by the foregoing Evidence Rules from admission as substantive evidence. Indeed, the rule excludes such statements even for neutralization purposes unless the prosecutor is able to demonstrate surprise. State v. Gallicchio, 44 N.J. 540, 547-548 (1965). And the surprise must be genuine. State v. Caccavale, 58 N.J. Super. 560, 572 (App. Div. 1959). In the latter case, finding that the neutralizing evidence had been received without a showing of surprise, the court wrote:
To allow the neutralizing testimony to stand would completely demolish the principle that a defendant cannot be condemned on hearsay testimony. Neutralization may never be used as a means of conveying inadmissible matter to the jury by the device of offering a witness whose testimony is known to be adverse and then, under the guise of impeachment, putting to him questions which will place before the jury ex parte statements he has made and whose only effect can be to damage, if not destroy, defendant's case. [at 573]
Notwithstanding the trial judge's instructions that the extrajudicial statements were received only for neutralization purposes, their prejudicial impact was held to require a new trial. In the appeal before us the hearsay testimony is not merely prejudicial; it is the only basis in the record for even thinking defendant guilty of the crime charged. The reality of the situation is no different from that of State v. Rappise, 3 N.J. Super. 30 (App. Div. 1949), in which we reversed a conviction for gambling and conspiracy where the only evidence of guilt consisted of prior contradictory statements received for purposes of neutralization.
Our commitment to the rule barring the introduction as substantive evidence of a witness's prior inconsistent statements when offered by the witness's proponent is of long *55 duration and has been elaborated in a series of neutralization cases. These carefully confine the use of such statements only to cancelling out unexpectedly adverse testimony. State v. Gallicchio, supra, 44 N.J. at 548; State v. Guido, 40 N.J. 191, 199-200 (1963); State v. Guida, 118 N.J.L. 289, 295-296 (Sup. Ct. 1937), aff'd 119 N.J.L. 464 (E. & A. 1938); State v. Bassone, 109 N.J.L. 176, 181 (E. & A. 1932); State v. D'Adame, 84 N.J.L. 386, 395-396 (E. & A. 1913); State v. Kysilka, 84 N.J.L. 6, 10 (Sup. Ct. 1913), aff'd 85 N.J.L. 712, 714 (E. & A. 1914); State v. Hall, 79 N.J. Super. 417, 423-425 (App. Div. 1963); State v. Baechlor, 52 N.J. Super. 378, 389 (App. Div. 1958); State v. Perillo, 18 N.J. Super. 549, 551 (App. Div. 1952); State v. Rappise, supra, 3 N.J. Super. at 33. Its purpose is to guard against the prejudicial effect of statements defendant had no opportunity to test by cross-examination. What is most conspicuous about these decisions is their particular sensitivity to instances in which the pretext of neutralization was used to screen a real underlying purpose of bringing to the jury damaging evidence of a hearsay nature.
Although the practice followed by the trial judge may have been adjudged constitutionally sufficient by the United States Supreme Court, the courts of this State have held on more than one occasion that we are free to afford greater protection than what is minimally required by the federal jurisdiction. State v. Kleinwaks, 68 N.J. 328, 334 (1975); State v. Johnson, 68 N.J. 349, 353 (1975). The Green opinion carefully limited itself to deciding only the constitutional issue of whether the federal confrontation clause was "necessarily inconsistent with a State's decision to change its hearsay rules * * *." It expressly withheld any opinion concerning the basic soundness of the hearsay rule as administered by the State of California. 399 U.S. at 155, 90 S.Ct. at 1933. I would also point out that the practice there considered had to do with extrajudicial statements received under a rule which authorized the receipt of prior inconsistent *56 statements made by a witness at a preliminary hearing subject to full cross-examination. Such an opportunity was not afforded in the case at hand.
While I would incorporate by reference the reasoning of Mr. Justice Brennan's dissenting opinion in Green v. California, supra, and although our State Constitution, N.J. Const. (1947), Art. I, § 10, guarantees every defendant in a criminal prosecution the right "to be confronted with the witnesses against him," I favor a reversal not on constitutional grounds but on substantive principles basic to the law of evidence.
Few rules are as well settled in our jurisprudence as that stated in Evid. R. 63:
Evidence of a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing is hearsay evidence and is inadmissible except as provided in Rules 63(1) through 63(32).
I disagree that the historic salutary purpose of this clear statement can be nullified on the tenuous rationale that because the witnesses were "called" by the court and not the prosecutor, the prosecutor was therefore free to introduce their prior inconsistent statements as substantive evidence. If such are not receivable as substantive evidence even in the neutralization setting when the prosecutor is genuinely surprised, what logical basis is there for treating it differently where the prosecutor says he cannot vouch for the witness and has foreknowledge that the witness is going to recant? Under our cases, in this posture of affairs he would not even be allowed to neutralize. The values which have been so carefully protected in the neutralization procedure are, if anything, more, not less, deserving of protection where the prosecutor's intention is to introduce substantive evidence.
Inordinate stress is placed upon the fact that the prosecutor represented to the trial judge that he was unable to "vouch" for the credibility of these witnesses. If this is so, why should he have brought their earlier statements into the *57 case at all? What he really meant is that he had decided the earlier statements were true but was not satisfied with what he anticipated the declarants would testify in court. Hence the paradox that where the witness has a penchant to lie, his out-of-court declarations may be used by the party bringing him into court, whereas those of a trustworthy witness may not be so used.
Whatever is meant by "vouching" for the credibility of witnesses and the fiction of a "court witness," stripped of semantic obscurations, the actuality is that the prosecutor simply could not prove his case under settled principles of evidence law and therefore asked to use the out-of-court statements even though they were palpably inadmissible. The trial judge allowed him to do this, and this ritual was appropriately solemnized through the use of the "voucher" rule and the designation of "court witness."
I cannot deny that cases arise where the interests of justice are advanced by designating someone as a court witness. The power to call a witness lies in the court's discretion, 81 Am.Jur.2d, Witnesses, § 3 (1976), but the pursuit of truth and justice are hardly served when these powers are used to bring into the truth-finding process evidence of such untrustworthy character and to defeat defendant's right to a trial based on competent evidence. How can it be otherwise when the only justifications for what was done are the prosecutor's representation that his witnesses are liars and the court's witness rule is used as a vehicle to bring before the jury their out-of-court statements? This is clearly a mistaken exercise of discretion, a view which is supported by the frequently cited decisions of the Supreme Court of Illinois in People v. Grigsby, 357 Ill. 141, 191 N.E. 264 (1934); People v. Johnson, 333 Ill. 469, 165 N.E. 235 (1929); People v. Krejewski, 332 Ill. 120, 163 N.E. 438 (1928). Furthermore, the witness's in-court testimony was in no sense "damaging" to the State's case. They testified only to a lack of knowledge of material facts and, at most, disappointed the prosecutor. See McCormick, Evidence, § 36 at *58 71 (2 ed. 1972). In this context even neutralization is disallowed. State v. Gallichio, supra, 44 N.J. at 546.
Given compelling situations certain departures from convention may be authorized. But these, too, have their limits:
The government must, of course, use its witnesses as it finds them. In many cases the prosecution must depend upon the testimony of persons who are co-defendants, co-conspirators, felons, accomplices, etc., and such witnesses often evidence hostility, are impeachable from their past or current activities, or change or slant their testimony from what, based upon prior statements, the government expects them to say. Under such circumstances, a district judge may afford wide latitude to the government to lead, to cross-examine, and partially to impeach such witnesses. [United States v. Karnes, 531 F.2d 214, 217 (4 Cir.1976)]
New Jersey practice is not significantly dissimilar from what is described in the foregoing excerpt, and to these thoughts I would add only that the threat of a prosecution for perjury or false swearing has also been found a useful aid in the search for truth.
Basic to the school of thought which favors reception of prior inconsistent statements under circumstances such as these is the notion that the defendant is not deprived of the right of cross-examination since he must be afforded such opportunity when the declarant takes the stand in court. Furthermore, he may cross-examine the police witnesses who testify to the making of the prior statements. But I disagree that either of these conditions adequately meets the need for a confrontation between the defendant and the witness at the time when the damaging extrajudicial statement is made. Actually, cross-examination of such witnesses by the defendant during the judicial proceedings serves little purpose since the very problem presupposes that the witness-declarant has already denied the prior statement. The only issue is whether the recantation is a fabrication. If the recantation is found false, it is the out-of-court declaration upon which the jury may then rest its judgment of *59 guilt, and not his court testimony, even though the defendant has not had the opportunity to sift the conscience of the declarant, to probe the operative factual basis of his prior statement, and even though the jury had no opportunity to observe the declarant's demeanor while being tested for the truthfulness of his prior statement. To these considerations should be added the inflammatory effect of the State exhibiting to the jury a succession of witnesses who appear to be nefariously intent on obstructing the administration of justice for the defendant's benefit. As to the fact that the defendant may cross-examine the witness who took the out-of-court statement or who overheard it being made, here too all that this can ascertain is whether the statement was made, not whether it was truthful or accurate.
I might be less obdurate in my view if, in displacing the hearsay rule, some other mechanism were substituted which provided a comparable safeguard for insuring the testimonial trustworthiness of the out-of-court statement. Examples of these are to be found in all recognized exceptions to the hearsay rule, such as past recollection recorded, depositions, prior testimony, spontaneous utterances, dying declarations, admissions, declarations against interest, statements of physical or mental condition of the declarant, business entries and official records. 5 Wigmore, Evidence (Chadbourn rev. 1974), § 1422 at 253.
The dangers inherent in what we sanction here are intimated in California v. Green, supra, 399 U.S. at 168, 90 S.Ct. at 1940, when the Supreme Court acknowledges that on the rationale which it accepted "the casual, off-hand remark to a stranger" will logically be equally admissible as "the carefully recorded testimony at a prior hearing." Therefore, if the procedure followed below is sanctioned, even a chance overheard comment could form the basis for criminal liability of a third party where the declarant later denies making the statement or denies the truth of its content.
If this significant departure from long-established standards is to become a part of our jurisprudence, it should *60 await amendment of the Evidence Rules following consideration by our Supreme Court.
I would reverse.