177 N.J. Super. 533 (1981)
427 A.2d 109
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MORRIS HACKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 1981.
Decided March 2, 1981.
*534 Before Judges BOTTER, KING and McELROY.
Stanley C. Van Ness, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
John J. Degnan, Attorney General, attorney for respondent (Thomas A. Penn, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Defendant and three others, James Joyce, Wayne DeBellis and Miles Burke, were charged in one indictment with various offenses arising out of efforts to influence a Gloucester County jury before whom James Joyce had been tried in 1975 on charges of bribery and misconduct in office. Count 1 charged defendant and his codefendants with conspiracy to obstruct justice and to commit embracery by influencing jurors in the earlier criminal trial against James Joyce. Count 9 charged defendant and Miles Burke with attempting to influence George Smith who was a juror in the Joyce trial. Count 14 charged defendant, Joyce and DeBellis, with obstructing justice. Defendant was convicted on these counts and was sentenced to a term of two to three years for the conspiracy, with concurrent two- to three-year terms on the embracery and obstruction of justice counts concurrent with the sentence on the conspiracy count. In addition, a fine of $1000 was imposed on Count 9.
*535 Defendant's trial had been severed from the trial of his codefendants.[1] Defendant's trial, before a jury, took place in February 1979. The Joyce trial in which the jury tampering occurred was held in Gloucester County in September 1975.
Joyce had been chairman of the Camden County Democratic Committee in 1975. Defendant was then his chauffeur and aide. Codefendant DeBellis was an undersheriff of Gloucester County and a friend of Dante Cupiauolo, a former investigator in the Camden County Sheriff's Office. Originally a conspirator, Cupiauolo became an informant for the State Police and he was the State's principal witness in defendant's trial. Miles Burke, who also worked in the Camden County Sheriff's Office, was allegedly used to make contact with the employer of George Smith, the juror in the Joyce trial whom the conspirators had approached.
Cupiauolo testified extensively to meetings of the conspirators beginning in May 1975 after Joyce was indicted in Gloucester County. He introduced DeBellis to Joyce since it was possible that DeBellis would "pull the jury" in Joyce's trial. Cupiauolo testified that he received data from DeBellis concerning prospective jurors and that Joyce instructed him and defendant to check on their voting records. This was confirmed by the testimony of an employee of the Gloucester County Board of Elections who testified that defendant, Cupiauolo and others, posing as representatives of the State Election Committee, spent about four hours in her office in August or September 1975 examining files and recording information from the election board's records. Cupiauolo testified that thereafter, at a meeting with Joyce, DeBellis and defendant, plans were made to contact George Smith and to attempt to bribe him with $300 to $500 which Joyce gave to Cupiauolo. Cupiauolo and DeBellis *536 went to see juror Smith, but he refused the money. The conspirators continued their efforts to reach Smith through his employer in the hope of persuading him to "hang" the Joyce jury.
During the Joyce trial in 1975, and for some years before and after that trial, defendant was intimately involved with Lorraine Susan Adcock, formerly known as Sue Scalella. They had lived together for some time. It was information originating with Ms. Adcock which alerted the State Police to the jury tampering activities. The State Police started its investigation while the Joyce trial was still in progress and subpoenaed witnesses to testify before a grand jury.
The principal issues in the case involve the use of portions of a prior statement given by Ms. Adcock under oath to the State Police and testimony which she gave to a grand jury in December 1975 and April 1977. Ms. Adcock had furnished information which implicated defendant in the jury tampering activities of his codefendants. The testimony related to a conversation with defendant during the earlier Joyce trial in which defendant told Ms. Adcock that Miles Burke told defendant that contact was made with an employer of juror Smith. Other testimony concerned defendant's departure from the courthouse during the Joyce trial to avoid being subpoenaed by the State Police regarding the jury tampering activity. The excerpts from the sworn statement given by Ms. Adcock in November 1975 related to the information regarding Smith's employer which defendant transmitted to Joyce and the fact that "they" wanted defendant to leave the courthouse to avoid being served with a subpoena by the State Police.
Before calling Ms. Adcock as a witness in defendant's trial the prosecutor suspected that she had a loss of memory of the events and conversations with defendant to which she had previously testified before the grand jury. Accordingly, a hearing was held out of the presence of the jury. Ms. Adcock testified she could not recall many of the events to which she *537 testified before the grand jury. She was found to be a hostile witness, and the trial judge called her as the court's witness so that she could be cross-examined by the State as well as the defense. In doing so the trial judge relied primarily on this court's opinion in State v. Ross, 162 N.J. Super. 47, 52 (App.Div. 1978), a holding that was reversed by our Supreme Court after the conclusion of defendant's trial, 80 N.J. 239 (1979). See, also, State v. Singleton, 158 N.J. Super. 517, 522-523 (App.Div. 1978), cert. den. 79 N.J. 470 (1978). The holding in State v. Ross, supra, 80 N.J. at 248-250, generally forbids a trial judge to call a recanting prosecution witness in order to avoid the voucher rule embodied in Evid.R. 20 prior to its recent amendment. The rule was designed to prevent the proponent of a witness from using a prior inconsistent statement of the witness substantively, limiting its use to neutralization of current testimony when the proponent has been surprised by that testimony.[2]
*538 The State argues that the trial judge's discretion in calling Ms. Adcock as the court's witness should be upheld; that the witness was not called to make out a prima facie case which was otherwise lacking, as in State v. Ross, supra; that Ms. Adcock's sudden unwillingness to testify established surprise; that, to some extent, defense counsel acquiesced in the trial judge's action since this court's holding in Ross was the prevailing law at the time; that the admission of this evidence was at most harmless error and not plain error; that the ruling should be deemed part of the developing law of evidence under Evid.R. 5, and that, in any case, the evidence was admissible as past recollection recorded under Evid.R. 63(1)(b).[3] Since there is merit to this last contention, we need not consider the other arguments advanced by the State. However, we note that there *539 is some merit to the State's contention that the evidence which came into the case in this fashion might constitute harmless error and that to some extent it should be judged by the plain error test because at one point defense counsel conceded that testimony previously given by Ms. Adcock which she could no longer recall could be placed in evidence.
Evid.R. 63(1)(b) provides that a statement previously made by a witness is admissible (provided it would have been admissible if made by him while testifying) if it "[c]oncerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately" and is contained in a writing made contemporaneously or when the events were fresh in the witness's memory or which the witness affirms as true. Evid.R. 63(1)(b)(iii) provides that if a witness remembers only part of a writing's contents, "the part he does not remember may be read to the jury but shall not be introduced as a written exhibit over objection."
On the facts of this case the introduction of portions of Ms. Adcock's prior testimony was proper. In a sense it is inaccurate to refer to this evidence as prior contradictory statements.[4] Ms. Adcock simply suffered a substantial loss of memory at defendant's trial for some events that were fresh in her mind closer to the time they occurred in 1975.[5] However, at defendant's trial she stated that her prior statements were truthful, and she frequently said that she could not remember then, in 1979, but if her statements had been previously recorded she "must have" made them.
*540 Thus, Ms. Adcock's prior statements were admissible as past recollection recorded under Evid.R. 63(1)(b). See State v. Wood, 130 N.J. Super. 401, 408-410 (App.Div.), aff'd 66 N.J. 8 (1974). Therefore, it is immaterial that the witness was called by the trial judge. The evidence would have been admissible if Ms. Adcock had been called by the prosecution. It is also immaterial that the evidence was admitted on a different theory which seemed correct at the time but which the Supreme Court disallowed thereafter in State v. Ross, supra.
The same conclusion applies to the testimony of Detective Rowen, which is the subject of defendant's Point IV. (We note that Point IV is couched in plain error terms; no objection on grounds now urged was made when Det. Rowen testified.)
In Point II defendant contends that reversible error was committed by not admitting in evidence the prior trial testimony of a witness who was in Aruba at the time of defendant's trial.
We are told that the prior testimony of this witness contradicted Cupiauolo's testimony that defendant was present at a meeting in which Joyce and others agreed to bribe juror Smith. However, the trial judge ruled that this witness, a New Jersey attorney, was not "unavailable" within the meaning of Evid.R. 62(6)(d) and Evid.R. 63(3). We concur. Although the witness was beyond the jurisdiction of the court at the time of the trial, Evid.R. 62(6)(b), he could have been subpoenaed before trial; thus, defendant failed to show that he sought with "due diligence" to procure the attendance of the witness. Evid.R. 62(6)(d).
In Point III defendant claims reversible error in the exclusion of taped conversations between defendant and Cupiauolo. We find no error in this ruling. Defendant's contention is that, although some allegedly incriminating portions of defendant's conversations were admitted on the State's case, the remaining portions of the tapes would show that defendant had not made any further incriminating statements. The fact that the State used only a small portion of the recorded conversations does not make the balance relevant.
*541 The final point, a claim of cumulative error, has been stripped of all vitality in view of our disposition of the other contentions.
Affirmed.
NOTES
[1] Codefendants Joyce and DeBellis were convicted on a number of counts of this indictment and Burke was acquitted on all charges. The convictions of DeBellis and Joyce were affirmed in separate appeals to this court, although both had died after their convictions. See Newark v. Pulverman, 12 N.J. 105, 115-116 (1953).
[2] Amendments to Evid.R. 20 as well as Evid.R. 63(1)(a), which became effective on July 1, 1980, 106 N.J.L.J. 41 (July 17, 1980), would permit the use of prior testimony of a recanting witness as substantive evidence in a later trial. The explanation of the language change in Evid.R. 20 ("The exception as to neutralization shall not, however, apply to prior contradictory statements admissible into evidence pursuant to Rule 63(1)(a)") accompanying the rule change makes the Supreme Court's intention clear. 106 N.J.L.J., supra, at 67. Thus, at present, prior inconsistent statements can be offered substantively to prove the truth of matter asserted if the statements are in a form which satisfy the reliability criteria established by the amendment to Evid.R. 63(1)(a), (prior testimony or a written statement signed by the witness in circumstances establishing its reliability), whether the prior inconsistent statement is offered by the proponent of a witness or another party. Previously, under Evid.R. 20, the proponent of a witness who recants could use the prior inconsistent statement only to neutralize the current testimony and only if the proponent is surprised by the current testimony. The amendment thus relaxes the old voucher rule embodied in Evid.R. 20 but restricts the use of prior contradictory statements when offered substantively by a party other than the proponent of the witness to statements satisfying the new criteria of Evid.R. 63(1)(a). Compare with State v. Provet, 133 N.J. Super. 432, 437 (App.Div.), certif. den. 68 N.J. 174 (1975); see State v. Ross, supra, 80 N.J. at 248.

The liberalization of Evid.R. 20 brings the rule closer to the broad rule initially proposed in the Report of the New Jersey Supreme Court Committee on Evidence (1963), at 59. The proposal placed virtually no conditions on the admissibility of a prior inconsistent statement. A like federal rule was proposed by the United States Supreme Court, but conditions were added by Congress. Fed.R.Evid. § 801(d)(1)(A); Am.Jur.2d, Fed.R.Evid. § 801.2, 94-95 (1975). The strict common law voucher rule embodied in Evid.R. 20 caused difficulty, particularly with suspicious recantations by prosecution witnesses. See State v. Ross, supra, and State v. Singleton, supra. However, we are unaware of any difficulty in the application of Evid.R. 63(1)(a) in its prior form that moved our Supreme Court to restrict the use of prior inconsistent statements of another party's witness.
[3] Evid.R. 63(1)(b) provides:

A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
........
(b) Concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately and contained in a writing which (i) was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness's memory, (ii) was made by the witness himself or under his direction or by some other person for the purpose of recording the witness's statement at the time it was made, and (iii) is offered after the witness has testified that the statement he made was a true statement of such fact, provided that where the witness remembers only a part of the contents of a writing, the part he does not remember may be read to the jury but shall not be introduced as a written exhibit over objection; ....
[4] This can be debated with respect to the reason why defendant left the courthouse during the Joyce trial, but we do not consider that evidence significant in the case, viewing the trial as a whole.
[5] The 1977 testimony may not have been considered "fresh" in memory, but it simply repeated the 1975 testimony and sworn statement which were freshly given regarding defendant's departure from the courthouse and Burke's contact with Smith's employer.