575 A.2d 82

STATE OF NEW JERSEY, PLAINTIFF, v. M.Z., DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided March 15, 1990.

*Peter Boser*, Asst. Prosecutor for the Plaintiff (*John Kaye*, Monmouth County Prosecutor)

*W. Lane Miller*, Esq., for the Defendant.

MARK A. SULLIVAN, JR., J.S.C.

The issue in this case is one of first impression. It involves the application of *Evid.R.* 63(33) which was adopted June 13, 1989. That rule provides:

"A statement by a child under the age of 12 relating to a sexual offense under the Code of Criminal Justice committed on, with, or against that child is admissible in a criminal proceeding brought against a defendant for the commission of such offense if (a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 8(1), that on the basis of the time, content, and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of paragraph (b) of Rule 17."

The indictment in this matter charges the defendant with aggravated sexual assault, sexual assault and endangering the welfare of a child. The allegations are that he committed an act of sexual penetration of LL, a three-year-old girl.

The purpose of this motion is to determine the admissibility of certain out-of-court statements of LL pursuant to the above cited rule. The statements consist of three separate items. The first consists of statements made by the alleged victim to her mother. The second item consists of statements made to an investigator from the Monmouth County Prosecutor's Sex Crimes Unit. The third is the alleged victim's Grand Jury Testimony.

At the pre-trial hearing conducted on this issue, the following testimony was elicited:

LL's mother, who will be referred to herein as KD, testified that on November 5, 1987 she was at her sister's home, next door to her own home in Freehold, when she heard her daughter, who was outside in the driveway between the two houses, scream. She ran outside and found her three-year-old daughter standing, fully dressed, in the driveway shouting "The man, the man." She noticed that the little girl had had a bowel movement in her pants and she took her inside to clean her off. Suspecting that something improper had happened, she called

the police. Not much more information was forthcoming from the girl at this point.

The mother testified that the girl started having nightmares that night and started wetting the bed.[1] The mother discovered a scratch on her stomach which she said she received from "the man."

Over the course of the next few days the mother showed the girl a catalogue of men's clothes and asked her to identify the clothes the man was wearing. The girl picked out a green vest, an orange baseball hat, a flannel shirt, jeans and hiking boots. She also said that the man had a secret that she couldn't tell.

At some later point the girl told her mother that the man said his name was "Mark L", "L" being her own last name. LL went on to say that the man did magic tricks with an orange ball and that he was wearing earrings. She further stated that, when the man left, he put a bicycle in a red van, that there was another man and a little girl in the van and that they drove away.

As a result of all of this, LL's mother arranged to have her receive counseling. The counselor told LL's mother not to question her about the event, but to let her talk about it when she brought it up herself. KD testified that, as time passed, LL would not go to sleep at night without checking all the doors to see that they were locked. Later the girl told her mother that "the man" had worn a clown mask when he came up the driveway. She went on to say that they had been at the man's house before and that he had a little girl of his own. She then told her mother that "the man" asked her to come to "Jersey Freeze", a local ice cream parlor, with him to meet her father. When she refused to go he threatened her with a knife. LL's mother said that all of this came out without any prompting on her part.

---

[1] Many of these facts were contradicted at trial. For purposes of this motion, however, we will rely solely on the evidence adduced at the Rule 8 Hearing.

Sometime around Christmas, when they were all sitting in the kitchen LL finally said that "the man" was "Mark, the man who has Reilly." Reilly was a dog that LL's family had previously given to the defendant herein.

Darlene Hoffman, an investigator for the Monmouth County Prosecutor's Sex Crimes Unit testified that she first met with LL on November 9, 1987, four days after the alleged incident. She interviewed LL alone in her office. LL made few, if any, verbal responses but would nod "yes" or shake her head "no" in response to questions from the investigator. The questions were based on information given to Investigator Hoffman by KD, LL's mother.

In this manner LL indicated that the man had hurt her, that he was dressed in the manner set forth above, that he had poked her in the stomach and that he left when she screamed.

On January 5, 1988 Investigator Hoffman interviewed LL again at which time she was verbal. On this occasion LL told Investigator Hoffman that "the man" was "Mark, who has Reilly," that he had scratched her on the stomach with a knife, that he had taken her panties off and that he would kill her and her brother if she told anyone. Investigator Hoffman also gave her anatomically correct dolls and asked her to show what the man had done to her. LL demonstrated an act of sexual intercourse. She later repeated this demonstration in front of the Grand Jury.

No one disputes compliance with the notice requirements of *Evid.R.* 63(33) and the Prosecutor represented his intention to call the victim as a witness at trial. The sole issue before this court then is whether, on the basis of the time, content, and circumstances there is a probability that the above statements are trustworthy.

■■ This court's reading of the word "trustworthy" is something different from the word "credible." Witnesses who are not credible are permitted to testify firsthand in court on a regular basis. The fact that they may not be telling the truth

is an issue for the jury. They are permitted to testify to those things that they themselves perceived, so long as they take an oath to tell the truth. The oath, combined with their first-hand knowledge is sufficient evidence of "trustworthiness" to permit the jury to decide "credibility." *State v. Briley*, 53 *N.J.* 498, 506, 251 *A.*2d 442 (1969).

■ The problem becomes more complicated when we move to hearsay, however. Here we have to have some other indication of "trustworthiness." We have this with spontaneous utterances, public records, admissions of parties, prior testimony and other itemized sources of trustworthiness. *State v. Phelps*, 96 *N.J.* 500, 511, 476 *A.*2d 1199 (1984)

■■ Under *Evid.R.* 63(33), in addition to the itemized requirements of age, nature of offense, identity of victim, and nature of proceeding, we have a requirement of a finding of "trustworthiness." In order to make such a finding the court must have some indicia of credibility similar in nature to those itemized in the other hearsay rules. Whether such indicia of credibility, in fact, show credibility is a question for the jury, however.

The first problem that this court has in making any determination under *Evid.R.* 63(33) is the lack of any testimony from the alleged victim during the Rule 8 Hearing. This would certainly go to the "circumstances" of the statements but is not available to the court.

■ In making its determination this court is guided by the Supreme Court's decision in *State v. DR*, 109 *N.J.* 348, 537 *A.*2d 667 (1988). That case, which was decided before the enactment of *Evid.R.* 63(33), sets forth guidelines for the adoption of such a Rule and ultimately resulted in this Rule's adoption. One of the criteria referred to by the Supreme Court in that case for evaluating "trustworthiness" is the spontaneity of the statements. At p. 359–60 it states the following:

> "Moreover, a child victim's spontaneous out-of-court account of an act of sexual abuse may be highly credible because of its content and the surrounding circumstances. Young children, having no sexual orientation, do not necessarily regard a sexual encounter as shocking or unpleasant, and frequently relate such incidents to a parent or relative in a matter-of-fact manner."

This court finds that there has been such a showing of spontaneity as to the statements made by the alleged victim to her mother. Although they took some time to come out, and were not "matter-of-fact", they do not appear to have been prompted. As such, this court finds that they are "trustworthy." Credibility is a jury issue, however.

This court does have a problem with the statements made to Investigator Hoffman. In *State v. DR*, although a prosecutor's detective had questioned the child victim, that detective took the child to a clinical psychologist, a Doctor Krupnick, whose testimony was offered since he had imposed *clinical controls* on his questioning. This was necessary because of the absence of "spontaneity" in such an interview. In the instant case, this court asked Investigator Hoffman if there was any way, through her training and experience, that she could separate LL's own recollection of the incident in question from suggestions that may have been made to her. Investigator Hoffman replied that she could not.

The prosecutor here argues that the Supreme Court did not intend to limit the application of the proposed Rule to psychologists or other expert witnesses. This court agrees with that position as far as it goes. It is this court's opinion that responses to a detective's interrogation could be admitted pursuant to *Evid.R.* 63(33) so long as the same clinical controls referred to on p. 357 of *State v. DR* are present and a proper foundation is laid. In the instant case such controls are conspicuously absent.

This same line of reasoning carries over to the Grand Jury testimony which followed the last meeting with Investigator Hoffman and repeated the demonstration performed there.

There is just not enough evidence of a clinically sound environment.

An Order is to be entered permitting KD to testify to the statements made to her concerning this incident by LL. Said Order will not permit similar testimony by Investigator Hoffman or a reading of the Grand Jury Transcript.