742 A.2d 990 (2000)
327 N.J. Super. 137
STATE of New Jersey, Plaintiff-Respondent,
v.
Jesus DELGADO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1999.
Decided January 3, 2000.
*992 Ivelisse Torres, Public Defender, for defendant-appellant (Regina L. Gelzer, Designated Counsel, on the brief).
John J. Farmer, Jr., Attorney General, for plaintiff-respondent (Jordana Jakubovic, Deputy Attorney General, of counsel and on the brief).
Before Judges KING, KLEINER and PAUL G. LEVY.
*991 The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
Defendant was convicted of two counts of sexual assault in violation of N.J.S.A. 2C:14-2b, two counts of child abuse in violation of N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3 and two counts of endangering the welfare of a child in violation of N.J.S.A. 2C:24-4a.[1] He was sentenced to two consecutive seven-year terms of incarceration for the two sexual assault convictions, and the child abuse and endangering convictions were merged into the sexual assault convictions; appropriate statutory fines and penalties were assessed.
In 1996, T.S. and C.P. spent occasional time at the home of defendant and his live in girlfriend, S.H. During this time, both girls slept overnight and were entrusted to the care and protection of defendant and S.H. Neither, however, was directly related to either defendant or S.H. Each girl testified at trial that she was sexually assaulted by defendant on multiple occasions during the time in question. The jury gave credence to this testimony and found defendant guilty of sexually assaulting both girls. At the time of the assaults, T.S. was twelve years old and C.P. was seven years old.
Periodically T.S. was left alone with defendant. T.S. described three different instances of sexual abuse. Eventually, T.S. revealed the course of abuse to her adopted sister, G.L., though she did not reveal any specifics of the assaults at that time. G.L. encouraged T.S. to tell her mother, which she eventually did. The second victim, C.P. related her story of abuse before T.S. did, and this led to the discovery of defendant's abuse of T.S.
At trial, C.P. testified via closed-circuit television over defense counsel's objections. Additionally, also over defense counsel's objections, the trial court allowed the jury to hear a taped statement C.P. had given to the police shortly after informing her mother of these assaults. C.P. recounted two instances of abuse.
The police took statements from both T.S. and C.P. shortly after they told their mothers about these assaults. The police also interviewed defendant and he admitted there may have been contact, but protested that any such contact was unintentional. Other than those protests, the parties essentially agreed most of the incidents occurred. At trial, defendant argued the interviewing officer "bullied" him into making those statements. Defendant presented S.H. and his son as witnesses. *993 Both S.H. and defendant's son claimed defendant could not have committed these offenses, he never lied to them and he never engaged in this type of activity. Obviously the jury believed the girls and did not believe the defendant as it convicted him of sexual assault.
On appeal, defendant contends the trial judge erred "in permitting C.P. to testify out of the presence of defendant" and "in allowing the jury to hear C.P.'s taped statement." He also claims the sentence was excessive and his trial attorney provided ineffective assistance, thus denying him a fair trial.
I.
C.P. reacted adversely when brought into the courtroom to testify as to the course of abuse which she was forced to endure. She was so upset at the prospect of testifying in open court that the judge held a hearing to determine whether testimony via closed circuit television was appropriate. After hearing this testimony and observing the child-witness, the trial judge ruled that, to protect her emotional well-being, the juvenile would testify via closed-circuit television away from the courtroom.
In prosecutions for sexual assaults and child abuse, a juvenile victim may testify outside the courtroom via video-link. N.J.S.A. 2A:84A-32.4. Our courts and the United States Supreme Court have addressed how this impinges on a defendant's right to confrontation. State v. Crandall, 120 N.J. 649, 577 A.2d 483 (1990); Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). New Jersey's statute has consistently been upheld as constitutional and not violative of defendant's right to confront witnesses, and a further discussion of this point would have no precedential value. R. 2:11-3(e)(2); State v. Smith, 158 N.J. 376, 384-85, 730 A.2d 311 (1999).
There are procedural safeguards and requirements which must be met in applying N.J.S.A. 2A:84A-32.4 and we now address defendant's claims that those safeguards were not met. Defendant claims the trial judge erred (1) in allowing closed-circuit testimony without finding the child was suffering from "severe emotional or mental distress" if required to testify in open court; (2) allowing the juvenile to testify outside the presence of the jury, since she wasn't afraid of the jury or the courtroom; (3) not sua sponte informing defendant of his right to request the child testify in front of the jury if he was removed from the courtroom during the proceedings; and (4) in failing to make specific findings as to the impact on spectators.
The trial judge is required to make findings concerning each of the sources of distress for a juvenile witness. Crandall, supra, 120 N.J. at 657, 577 A.2d 483. Here the judge properly found that the child would be too fearful to provide accurate testimony if she were forced to testify in open court; indeed, the child even refused to testify in open court. The judge's findings and the juvenile's reactions were sufficient to meet the statutory criteria. C.P. was clearly extremely upset at the prospect of testifying in the courtroom, indicating that both the defendant and the jury made her uncomfortable. This alone is enough to satisfy the statutory criteria. Smith, supra, 158 N.J. at 386-87, 730 A.2d 311.
The trial judge correctly observed that we should not expect a juvenile to sit in court and explicitly state she is under "severe emotional or mental distress," nor should we expect her to understand those terms. A judge should listen to a child's statements, observe her reactions and draw inferences from physical manifestations to determine whether there is a substantial likelihood of "severe emotional and mental distress." Here, the judge did all of this and found the statutory criteria were met. We agree the child's reactions indicated a "substantial likelihood of severe emotional and mental distress" and *994 affirm the trial court's findings on this matter.
Defendant also claims the judge should have informed him that he had the option of waiving his right to be present if he felt the juvenile must testify in front of the jury. Crandall, 120 N.J. at 658-59, 577 A.2d 483. Defendant objected to the closed-circuit testimony, but never demanded C.P. testify in front of the jury or offered to waive his presence. Ibid. This waiver method should only be employed when defendant requests the child testify before the jury. Ibid. We find defendant's argument lacks merit since he never requested "that the child testify in open court or express[ed] a willingness to be absent himself from the trial during the presentation of the child's testimony." Id. at 659, 577 A.2d 483.
Lastly, defendant argues the judge erred since he made no specific findings on the record as to the impact of the presence of spectators or the jury. N.J.S.A. 2A:84A-32.4(b) lists the impact of spectators on the witness as a factor to be considered. While the trial judge did not expressly mention the effect of spectators, his findings as to the child's fear of the courtroom encompass the entire atmosphere, including any spectators. Failure to state that finding here is harmless error at best.
II.
When C.P. testified, she had difficulty answering many of the questions posed by each attorney due to memory problems. Often during her testimony, C.P. responded to questions with "I don't know" or "I don't remember." Due to her inability to recall the details of the sexual assaults, the prosecutor moved to admit C.P.'s taped statement which she had given to the police when the details of the assaults were fresher in her mind.
Defense counsel objected to use of the tape claiming the motion came as a "complete surprise" to him. He readily admitted, however, that he had received a copy of the audiotape during discovery. Defense counsel also objected to its introduction since the defendant had "no way to rebut the witness," the tape was "highly prejudicial" and it was untrustworthy. The judge listened to all of the arguments and ruled the audiotape admissible under N.J.R.E. 803(c)(5). In doing so, he allowed C.P. to be recalled as a witness and afforded defense counsel great latitude in questioning her on the contents of the tape and the circumstances under which the tape was made.
The judge ruled the tape admissible under the recorded recollection exception to the hearsay rule. He made specific findings under each part of N.J.R.E. 803(c)(5). Thus, if this was the proper rule to apply, the recorded recollection was admissible as proof of the matter contained therein. State v. Hacker, 177 N.J.Super. 533, 539-40, 427 A.2d 109 (App.Div.), certif. denied, 87 N.J. 364, 434 A.2d 1054 (1981).
However, we feel the judge applied the incorrect rule of evidence in this case.[2] Instead of N.J.R.E. 803(c)(5), the trial court should have applied N.J.R.E. 803(c)(27).[3] Due to the judge's well reasoned in-depth findings of fact, we hold this harmless error in this case, since the conditions of N.J.R.E. 803(c)(27) have *995 clearly been met. We would caution trial court judges in the future, to apply the standards set forth in N.J.R.E. 803(c)(27) when dealing with out-of-court statements of juvenile sex-assault victims since they present a special kind of evidence problem in sexual assault prosecutions.
A court may admit an out-of-court statement of a juvenile witness under the age of 12 if:
(a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to meet it;
(b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and
(c) either (I) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.[4]
[N.J.R.E. 803(c)(27).]
To satisfy the criterion of N.J.R.E. 803(c)(27)(a), the proponent may provide the statement to the adverse party through discovery, thus allowing the adverse party sufficient time to investigate and rebut the statement.[5]State in the Interest of S.M., 284 N.J.Super. 611, 620, 666 A.2d 177 (App.Div.1995). This requirement was intended to prevent a proponent of a statement from revealing it to an adversary on the eve of trial, on the morning of trial or during the trial. State v. W.L., 292 N.J.Super. 100, 111-12, 678 A.2d 312 (App.Div.1996). Here, the statement was provided to defendant well in advance of trial and defense counsel should have prepared to rebut or discredit the statement and could not have been surprised when the prosecutor offered it as evidence following C.P.'s inability to recall the events of sexual abuse. Thus, it meets the intent and strictures of N.J.R.E. 803(c)(27)(a). Defendant, in arguing the statement should not have been admitted, dwells on the second part of the rule, that the statement is probably trustworthy. The judge explicitly found the statement trustworthy. Recognizing that registration and notification is applied to every person convicted of sexual assault on a juvenile, N.J.S.A.2C:7-1 to -2, and understanding the onerous effects of the application of that law, E.B. v. Verniero, 119 F.3d 1077, 1102 (3d Cir.1997), we believe a heightened caution is needed in these cases. We have reviewed the record carefully and find the judge properly admitted C.P.'s recorded statement.
In State in the Interest of S.M., supra, 284 N.J.Super. at 621, 666 A.2d 177, five factors are listed for use by a judge in assessing the out-of-court statement:
(1) the circumstances under which the same statement was made to [the parent]; (2) its spontaneity; (3) the mental state of the declarant; (4) the terminology attributed to the declarant; and (5) *996 the declarant's lack of motive to fabricate.
These factors are not meant to be discrete, but should be applied together in forming an overall determination of trustworthiness. In order to ensure a statement is needed or that it is consistent, a judge should also listen to the juvenile and compare the testimony to the statement before admitting it. State v. Smith, 158 N.J. 376, 389, 730 A.2d 311 (1999). A juvenile sex assault victim's statement is prone to coercion due to the child's natural fear of imposing situations, such as being interrogated by a distraught parent or an investigating police officer. State v. D.G., 157 N.J. 112, 126-27, 131-32, 723 A.2d 588 (1999). Due to a child's natural hesitancy around strangers and authority figures, leading questions by an investigating officer are not necessarily inappropriate; the presence of leading questions in an interview may be necessary and does not automatically make the child's statement untrustworthy. State v. Smith, supra, 158 N.J. at 390, 730 A.2d 311.
In this case, the initial statement was made to C.P.'s mother and was not the result of any prompting. The story she told the investigating officer was similar and not the result of overly-leading questions. C.P. was forthcoming with information and the detective barely had to lead her at all. Thus, the statements were spontaneous, made under non-stressful conditions and were consistent. C.P. did not appear to be in a mental state which would lead her to lie; she was not caught doing something inappropriate and trying to avoid getting in trouble. State v. D.G., supra, 157 N.J. at 126-27, 723 A.2d 588. C.P. used appropriate terminology for a girl her age referring to defendant's "privates" and her "butt." She did not use sexually explicit language or language we would expect only from an older person. C.P. had no motive to fabricate as she did not have a fight with defendant and was not trying to avoid trouble herself. Thus, the statement was trustworthy.[6]
Due to C.P.'s trauma-induced memory problems, admission of this recorded statement was the only available method by which this evidence could be presented to the jury. We are convinced this statement had sufficient indicia of reliability, was not coerced and, as such, it was trustworthy and was properly admitted as evidence. State v. M.Z., 241 N.J.Super. 444, 451, 575 A.2d 82 (Law Div.1990).
III.
Lastly, defendant contends the sentence was manifestly excessive and improper. We disagree, because the aggravating and mitigating factors found by the judge are based on competent credible evidence, the judge sentenced defendant to consecutive terms in accordance with established precedent, and the aggregate sentence is not so clearly unreasonable as to shock the judicial conscience. State v. Roth, 95 N.J. 334, 363-64, 471 A.2d 370 (1984). Nothing further need be said about the sentence. R. 2:11-3(e)(2).
In a footnote, defendant claims he reserves the right to raise claims of ineffective assistance of counsel on a motion for post-conviction relief. It is inappropriate to raise legal issues in a footnote, rather than in proper point headings. Nevertheless, a careful review of the record reveals no incidents of ineffective assistance of counsel. State v. Mays, 321 N.J.Super. 619, 636-37, 729 A.2d 1074 (App.Div.1999). If, however, details of counsel's ineffective assistance lie outside the record we consider on appeal, defendant may raise them in a motion for post conviction review. State v. Preciose, 129 N.J. 451, 461-62, 609 A.2d 1280 (1992).
Affirmed.
NOTES
[1] Defendant was acquitted of first degree sexual assault in violation of N.J.S.A. 2C:14-2a.
[2] The prosecutor correctly observes that defendant's brief ignores N.J.R.E. 803(c)(5) under which the judge admitted the statement. However, we feel this was the incorrect analysis for the statement at bar. The prosecutor has not been prejudiced by this, though, as she very thoroughly explores an analysis under N.J.R.E. 803(c)(27). Thus, through her diligence, she has protected the State's interests on appeal.
[3] While we expound on the reason for this more fully, we note that treatment of statements given by juvenile sexual assault victims have long been treated differently by our courts. State v. D.R., 109 N.J. 348, 537 A.2d 667 (1988)(which suggested crafting a new rule of evidence to deal with out-of-court statements of juvenile sex assault victims).
[4] N.J.R.E. 601 concerns the competency of a witness. Defendant did not at trial, nor does he here, argue that C.P. was incompetent to testify as a witness.
[5] An attorney who receives an incriminatory statement by way of discovery should prepare to meet the accusations in that statement at trial. If they are damaging to the client, the attorney should expect that his adversary will attempt to put those facts in front of a jury through either live testimony or through use of the statement. Thus, providing the statement during discovery allows sufficient time for the adverse party to investigate the circumstances under which the statement was given, the credibility of the person giving the statement and the facts adduced through the statement.
[6] We add as an additional word of caution, while it may be tempting to use corroborating evidence to show trustworthiness, this would be inappropriate and should not be done. State v. D.G., supra, 157 N.J. at 125, 723 A.2d 588.