# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1006-24

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

J.W.G.,[1]

      Defendant-Appellant.

_____

      Submitted January 13, 2026 – Decided January 27, 2026

      Before Judges Chase and Augostini.

      On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 17-02-0125.

      Jennifer N. Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

---

[1] Initials and pseudonyms are used herein to protect the privacy and preserve the confidentiality of the victims. N.J.S.A. 2A:82-46(a); <u>R.</u> 1:38-3(c)(9).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Robert A. Polis II, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed supplemental briefs on appellant's behalf.

PER CURIAM

Defendant J.W.G. was convicted by a jury of all charges against him: two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and two counts of lewdness, N.J.S.A. 2C:14-4(b)(1). On direct appeal, we affirmed the conviction, remanded for resentencing, and the Supreme Court denied certification. State v. J.W.G., No. A-4064-18 (App. Div. Mar. 3, 2022), certif. denied, 252 N.J. 138 (2022). Nearly a year-and-a-half later, defendant filed a self-represented petition for post-conviction relief ("PCR"), raising claims of ineffective assistance of trial counsel, prosecutorial misconduct, jury corruption, and judicial irregularity. Appointed counsel filed a supplemental PCR brief on his behalf. The PCR court denied the petition without an evidentiary hearing.

Defendant appeals, arguing in a counseled brief:

A-1006-24

POINT I

BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.

(A). DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A PRE-TRIAL "TAINT" MOTION AND APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THE ISSUE

(B). DEFENSE COUNSEL WAS INEFFECTIVE IN NOT REQUESTING AN ADVERSE INFERENCE CHARGE FOR DESTROYED EVIDENCE AND APPELLATE COUNSEL WAS INEFFECTIVE IN NOT RAISING THE ISSUE

(C). DEFENSE COUNSEL WAS INEFFECTIVE IN NOT CROSS-EXAMINING E.M. AND APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THE ISSUE

(D). DEFENSE COUNSEL WAS INEFFECTIVE AT SENTENCING IN FAILING TO ARGUE FOR OVERVALUING OF AGGRAVATING FACTORS

POINT II

IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN

3

DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

In two supplemental self-represented briefs,[2] defendant argues:

POINT I

THE DEFENSE COUNSEL, THE APPELLATE COUNSEL FAILED TO ADDRESS THE LACK OF A TAINT HEARING, THE FAILURE TO CALL AN ADVERSE INFERENCE CHARGE, THE FAILURE TO CALL THREE WITNESSES FOR THE DEFENDANT, THE FAILURE TO PRESENT MEDICAL EVIDENCE FOR THE DEFENDANT, FAILURE TO SHOW EXCULPATORY EVIDENCE WITH A FAMILY MEMBER'S LETTER AND FAILURE TO CONFRONT A WITNESS FOR THE PROSECUTION. THE POST CONVICTION RELIEF ATTORNEY ADDRESSED THE LACK OF TAINT HEARING, THE ADVERSE INFERENCE CHARGE, THE FAILURE TO CONFRONT A WITNESS BUT DID NOT ADDRESS THE FAILURE TO CALL THREE WITNESSES AND THE FAILURE TO PRESENT DEFENDANT'S MEDICAL CONDITION.

POINT II

DEFICIENCY OF ATTORNEY FOR FAILURE TO CALL FOR A TAINT HEARING. THE DEFENSE COUNSEL FAILED TO PURSUE THIS ISSUE, THE APPELLATE ATTORNEY FAILED TO RAISE THE ISSUE, THE POST CONVICTION RELIEF COUNSEL ADDRESSED THIS ISSUE.

---

[2] We recite defendant's arguments verbatim.

A-1006-24

POINT III

DEFICIENCY OF ATTORNEY FOR FAILURE TO PRESENT A FAMILY MEMBER'S LETTER AS EVIDENCE ON THE ANIMOSITY OF PROSECUTION'S WITNESS TOWARD DEFENDANT AT TRIAL. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO RAISE THE ISSUE. (NOT RAISED BELOW).

POINT IV

DEFICIENCY OF ATTORNEY FOR FAILURE TO CALL WITNESSES FOR THE DEFENDANT. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO RAISE THE ISSUE. (NOT RAISED BELOW).

POINT V

DEFICIENCY OF ATTORNEY FOR FAILURE TO CALL AN ADVERSE INFERENCE CHARGE. THE DEFENSE COUNSEL, THE APPELLATE FAILED TO ADDRESS THIS ISSUE, THE POST CONVICTION RELIEF COUNSEL ADDRESSED THIS ISSUE.

POINT VI

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CONFRONT PROSECUTION'S WITNESS. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL WAS DEFICIENT FOR FAILING TO RAISE THE ISSUE. THE POST CONVICTION COUNSEL DID ADDRESS THIS ISSUE.

POINT VII

DEFICIENCY OF ATTORNEY FOR FAILURE TO SHOW EXCULPATORY EVIDENCE. DEFENSE COUNSEL, APPELLATE COUNSEL AND THE POST CONVICTION RELIEF FAILED TO RAISE THE ISSUE. (NOT RAISED BELOW).

POINT VIII

INEFFECTIVE ASSISTANCE AT COUNSEL, FAILURE TO EXAMINE PROSECUTION'S WITNESS ABOUT SEX ACTS SEEN PREVIOUS TO MOVING TO FAMILY MEMBER'S RESIDENCE. DEFENSE COUNSEL, APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL TO RAISE THIS ISSUE. (NOT RAISED BELOW).

POINT IX

DEFENSE COUNSEL INEFFECTIVE ASSISTANCE FOR FAILURE TO INVESTIGATE TV OR INTERNET ACCESS IN DEFENDANT'S ROOM. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL AND THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THIS ISSUE. (NOT RAISED BELOW).

POINT X

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INVESTIGATE CLOTHING. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL AND THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THE ISSUE. (NOT RAISED BELOW).

A-1006-24

POINT XI

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INVESTIGATE PROSECUTION'S WITNESSES IN THE DEFENDANT ROOM. DEFENSE COUNSEL WAS INEFFECTIVE, THE APPELLATE COUNSEL WAS INEFFECTIVE AND THE POST CONVICTION RELIEF FAILED TO ADDRESS THE ISSUE. (NOT RAISED BELOW).

POINT XII

INEFFECTIVE ASSISTANCE AT COUNSEL FOR FAILING TO OBTAIN AFFIDAVIT ON HOMEWORK COMPLETION. DEFENSE COUNSEL, THE APPELLATE COUNSEL AND THE POST CONVICTION RELIEF FAILED TO ADDRESS THE ISSUE. (NOT RAISED BELOW).

POINT XIII

DEFICIENCY OF ATTORNEY FOR LACK OF INVESTIGATION ON DOLL PLAY DURING INFANT WITNESSES INTERROGATION AND AT TRIAL. THE DEFENSE COUNSEL WAS INEFFECTIVE, THE APPELLATE COUNSEL WAS INEFFECTIVE AND THE POST CONVICTION RELIEF COUNSEL WAS INEFFECTIVE AT PRESENTING THE ISSUE. (NOT RAISED BELOW).

POINT XIV

DEFICIENCY OF ATTORNEY FOR LACK OF INVESTIGATION. FAILURE TO ADDRESS PRE-TRIAL SHAPING OF THE PROSECUTION WITH THE PROSECUTION'S WITNESSES BEFORE TRIAL. THE DEFENSE COUNSEL, THE

A-1006-24

APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THE ISSUE.  (NOT RAISED BELOW).

POINT XV

DEFICIENCY OF ATTORNEY FOR FAILURE TO CORRECT EVIDENCE.  THE DEFENSE COUNSEL DID NOT ADDRESS THIS ISSUE.  (NOT RAISED BELOW).

POINT XVI

PROSECUTORIAL MISCONDUCT FOR FAILURE TO INTERVIEW THREE WITNESSES.  THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THE ISSUE.

POINT XVII

PROSECUTORIAL MISCONDUCT, FAILURE TO INVESTIGATE CLOTHING DESCRIPTION.  THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THIS ISSUE.

POINT XVIII

PROSECUTORIAL MISCONDUCT FOR FAILURE TO INVESTIGATE FOR VIDEO EVIDENCE.

POINT XIX

PROSECUTORIAL MISCONDUCT FOR FAILURE TO INVESTIGATE MISSING BODY CAMERA FOOTAGE WITH VINELAND POLICE.  THE DEFENSE COUNSEL, THE APPELLATE

8

COUNSEL, THE POST CONVICTION RELIEF COUNSEL DID NOT ADDRESS THE ISSUE.

POINT XX

PROSECUTORIAL MISCONDUCT FOR WITHHOLDING EVIDENCE, NO TRANSCRIPTS GIVEN TO THE JURY. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF ATTORNEY FAILED TO ADDRESS THIS ISSUE.

POINT XXI
PROSECUTORIAL MISCONDUCT FOR USING FALSE EVIDENCE AT TRIAL. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THE ISSUE.

POINT XXII

PROSECUTORIAL MISCONDUCT FOR PREJUDICIAL BIASING OF THE JURY. DEFENSE COUNSEL, THE APPELLATE COUNSEL, THE POST CONVICTION RELIEF COUNSEL FAILED TO ADDRESS THIS ISSUE.

POINT XXIII

NOTE TAKING NOT ALLOWED BY COURT. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL, AND PCR COUNSEL DID NOT RAISE THE ISSUE.

POINT XXIV

COURT'S BIASING COMMENTS BEFORE JURY. THE DEFENSE COUNSEL, THE APPELLATE

9

COUNSEL, AND THE PCR COUNSEL FAILED TO ADDRESS THIS ISSUE.

POINT XXV

COURT ERROR, THE COURT ALLOWED A SECOND SHOWING OF THE VIDEOS OF PROSECUTION'S INFANT WITNESSES DURING JURY DELIBERATIONS.

POINT XXVI

COURT ERROR, NO ANALYSIS OF INFANT WITNESSES CUMBERLAND COUNTY PROSECUTION'S INTERVIEW AT TENDER YEARS HEARING. THE DEFENSE COUNSEL, THE APPELLATE COUNSEL AND THE PCR COUNSEL FAILED TO RAISE THE ISSUE.

POINT XXVII

DEFENDANT'S PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO PERMIT DEFENDANT TO REVIEW COUNSEL'S BRIEF UNTIL AFTER THE PCR HEARING.

POINT XXVIII

DEFENDANT'S CURRENT APPELLATE COUNSEL IS INEFFECTIVE BECAUSE DEFENDANT WAS NOT ABLE TO REVIEW COUNSEL'S FILINGS BEFORE SUBMISSION.

POINT XXIX

DEFENDANT'S PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT ALL OF

THE ARGUMENTS IN DEFENDANT'S PRO SE PCR PETITION.

POINT XXX

DEFENDANT'S PCR COUNSEL WAS INEFFECTIVE BY FAILING TO REFER TO OR INCORPORATE THE ARGUMENTS CONTAINED IN DEFENDANT'S PRO SE PETITION.

Having considered these arguments in light of the record and applicable law, we affirm.

I.

On direct appeal we summarized the trial testimony that led to the charges against defendant:

>       C.M. (Charles) and S.M. (Sara) are married and have three sons, C.M., D.M. (Danny), and E.M. (Erick). In September 2016, the family moved into a two-story home in Vineland with Sara's three uncles, one of whom was defendant. One evening, shortly after the move, Charles went to the bathroom to prepare Danny and Erick's bath and noticed defendant's bedroom door was closed. "[A]larm[ed]" by the "[un]common occurrence" of defendant's door being shut, Charles opened the door and saw defendant "on the floor alongside the bed with his pants down to his knees[,] masturbating in front of" Danny and Erick. Charles testified that a pornographic movie was also playing on the television. He said Danny, seven years old, and Erick, five years old, were fully clothed, but Erick's pants were unbuttoned.
>
>       . . . .

A-1006-24

When Charles asked his sons what happened with defendant, they did not say anything because, according to Charles, "they were upset with the situation." Sara, however, testified that she did not ask her sons about what happened but Danny, "upset" and "look[ing] like he was on the verge of tears," said defendant and he performed oral sex on each other. Danny also told her that he and Erick "were watching a movie and that there was . . . a pretty girl in [it]" with "a toy." He also said, "there w[ere] naked people in the movie and that they were doing stuff to each other." Erick was "completely . . . quiet sitting there, not moving, just looking straight ahead." When she asked Erick if defendant did anything to him, he "just sat there" and "said [']same as [Danny']."

. . . .

After being Mirandized, defendant waived his right to counsel and gave a video-recorded statement that was played before the jury. He said that after he ate dinner, he assisted Danny with his math homework in defendant's room when Erick "wanted to come . . . and play." Defendant then began to describe a previous incident when the boys walked in on him using the bathroom and saw his penis. According to defendant, "they were curious" and "want[ed] to find out why [his penis] was bigger than the[irs] . . . . And of course [he] said . . . as [they] get older [they,] to[o,] will have this opportunity." The boys then grabbed a tape measurer from the bureau in his room, insisting to "see how big [he was]." Defendant measured Danny and Erick's penises separately while they all sat on the edge of his bed. Charles then entered the room and demanded to know what was going on, while Danny and Erick's pants were open and defendant was pulling up his pants. At the conclusion of his statement, defendant was arrested.

12

A-1006-24

Two days later, Danny and Erick were interviewed by Vineland Detective Cara Kahn, which was video-recorded and played before the jury. Using interview techniques that prioritized the children's comfort and allowed the use of both open-ended and leading questions, Kahn first spoke with Danny. After overcoming his reluctance to speak, Danny eventually disclosed there was "oral sex between [he] and [defendant], as well as . . . between [Erick] and [defendant]." Using anatomical dolls, Danny showed her the sex acts that were performed. He said, "[s]omething did happen bad" and defendant was in jail "for what he did[] bad," but that she "should ask [his] mom" about what it was because she "can say it right." Danny then related that while defendant was helping him with his math homework, Erick was "punching [defendant] in his wiener." Defendant told Erick "not too hard."

Danny did not want to verbalize where he was touched, so he was asked to indicate on a picture where he was touched; he pointed to the penis. He also stated that defendant had him and his brother watch "[s]omething really bad" on television that they "didn't want to watch" with naked "girl body parts [and] boy body parts." Danny stated this was the first time defendant had done something like this.

Kahn then spoke to Erick, finding his demeanor to be "a little more outgoing and forthcoming than [Danny]," despite having "a difficult time demonstrating with the [anatomical] dolls." Erick stated defendant was in jail because "he did a bad something like sex" and that he showed them movies displaying sex. He later asked Kahn, "[y]ou're not allowed to put your mouth on a penis, right?" Erick said that he and Danny performed oral sex on defendant and defendant performed oral sex on them. He also

13

A-1006-24

claimed defendant measured their "whole bod[ies]" with measuring tape.

[Id. slip op. at 3-7.]

Additional facts and proceedings relevant to deciding defendant's appeal are discussed below.

II.

PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Afanador, 151 N.J. 41, 49 (1997) (citing State v. Preciose, 129 N.J. 451, 459 (1992)). It provides a "built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

The Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless he or she did not act "'within the range of competence demanded of attorneys in criminal cases'" and instead "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 770-71 (1970) and then citing Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). In addressing an ineffective assistance claim, we follow the two-pronged standard formulated by the United States Supreme Court in Strickland, which was adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58

14

(1987). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688, 694). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving [their] right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). A failure to satisfy either prong of the Strickland/Fritz test requires the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

"To establish a prima facie case [for PCR], defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). "[A] [defendant] must do more than make bald assertions that he was denied the effective assistance of counsel." Porter, 216 N.J. at 355 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Reviewing courts must make "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Ibid. Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

"The mere raising of a claim of [ineffective assistance of counsel] does not entitle the defendant to an evidentiary hearing." State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016). A court should hold an evidentiary hearing on a petition only if the defendant establishes a prima facie case in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b).

"[W]e will uphold the PCR court's [factual] findings that are supported by sufficient credible evidence in the record." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Nash, 212 N.J. at 540). Review of a PCR court's interpretation

of the law is de novo.  Nash, 212 N.J. at 540-41.  We review a PCR judge's decision to deny a defendant's request for an evidentiary hearing under an abuse-of-discretion standard.  See State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020).  And where the PCR judge does not hold an evidentiary hearing our review of both the factual inferences drawn from the record by the PCR judge and the judge's legal conclusions is de novo.  State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020).

## III.

## A.

We begin with defendant's allegation that his trial counsel's failure to request a taint hearing constituted ineffective assistance.  As support, defendant relies on State v. Michaels, 136 N.J. 299 (1994), where the Supreme Court recognized "that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony . . . ."  Id. at 312.  Furthermore, defendant argues his appellate counsel was ineffective in failing to raise the issue of a taint hearing on direct appeal.  See State v. Morrison, 215 N.J. Super. 540, 545-46 (1987), certif. denied, 107 N.J. 642 (1987) (electing to apply the same standard

17

for ineffective assistance of trial counsel to appellate counsel). We are not persuaded.

The Court in <u>Michaels</u> established the standard and procedure for determining whether a trial court should exclude an alleged child victim's out-of-court statement and in-court testimony because of the suggestiveness of "pretrial events" and "the investigatory interviews and interrogations." 136 N.J. at 320. The defendant bears the initial burden by showing "'some evidence' that the victim's statements were the product of suggestive or coercive interview techniques." <u>Ibid.</u> (citation omitted). The proffered evidence must be sufficient "to support a finding that the interrogations created a substantial risk that the statements and anticipated testimony are unreliable, and therefore justify a taint hearing." <u>Id.</u> at 321. If defendant does so, the State must prove by clear and convincing evidence that "the statements or testimony retain a degree of reliability sufficient to outweigh the effects of the improper interview techniques." <u>Ibid.</u>

Unlike the children here, the child victims in <u>Michaels</u> faced an array of coercive or suggestive practices, including: "the absence of spontaneous recall, interviewer bias, repeated leading questions, multiple interviews, incessant questioning, vilification of defendant, ongoing contact with peers and references

to their statements, and the use of threats, bribes and cajoling, as well as the failure to videotape or otherwise document the initial interview sessions . . . ." Id. at 321.

Defendant's assertion of "taint" is also belied by the testimony of Detective Kahn and the court's findings. Detective Kahn: (1) used a child first interview protocol; (2) ensured the interviews were conducted away from other law enforcement officers and in a child friendly environment; (3) sequestered E.M. and D.M.'s parents to ensure they could not see, hear, or provide input during the interviews; (4) used anatomical dolls, only following disclosures, to ensure the children could explain or show the events in their own language; and (5) confirmed that the two days between defendant's arrest and the children's interviews was neither abnormal nor indicative of parental coercion. Thus, defendant has failed to meet his burden of establishing that a Michaels hearing was warranted, and his claim that he would have prevailed at such a hearing is mere speculation.

Furthermore, the test for determining whether a child's out-of-court statement is admissible under N.J.R.E. 803(c)(27) overlaps with the test for determining threshold reliability of a child's out-of-court statement and in-court testimony under Michaels. Five nonexclusive factors may be considered in

A-1006-24

assessing trustworthiness under N.J.R.E. 803(c)(27): "(1) the circumstances under which the same statement was made to [the parent]; (2) its spontaneity; (3) the mental state of the declarant; (4) the terminology attributed to the declarant; and (5) the declarant's lack of motive to fabricate." State v. Delgado, 327 N.J. Super. 137, 147 (App. Div. 2000) (internal quotation omitted). A court's analysis under N.J.R.E. 803(c)(27) may be informed by Michaels principles and the related social science regarding the suggestibility of child victims. See State v. P.S., 202 N.J. 232, 253-54 (2010) (applying Michaels principles in declining to require tape recording as a pre-condition to admissibility under N.J.R.E. 803(c)(27)). In conducting analysis under N.J.R.E. 803(c)(27), courts look at the "'totality of the circumstances.'" P.S., 202 N.J. at 249 (quoting State v. Roman, 248 N.J. Super. 144, 152 (App. Div. 1991)).

Defendant fails to make a prima facie showing that the result would have been different had a Michaels hearing been requested. The trial court assessed the reliability of the children's statements—albeit under N.J.R.E. 803(c)(27) and not Michaels—and found the statements were reliable and admissible. Even insofar as defendant's counsel could have argued for a Michaels hearing, the speculative nature of the hypothetical motion's success is insufficient to

A-1006-24

establish ineffective assistance of counsel and defendant has not established a prima facie case warranting an evidentiary hearing on these grounds.

## B.

We next consider defendant's contention that counsel was ineffective for failing to argue for an adverse inference charge at trial concerning lost body-worn camera ("BWC") footage. To contextualize this argument, when the police were initially called, Officer Magee arrived at the house and spoke with defendant without issuing Miranda[3] warnings. Despite the questioning, and the officer confirming his BWC was on, the footage was lost due to an "oversight on the police department's part." Although the trial court determined the statement was knowingly, voluntarily, and intelligently given, it ruled, insofar as the prosecution sought to use defendant's pre-Miranda statement at trial, that a negative inference would be explained to the jury.

However, the prosecution did not introduce defendant's pre-Miranda statement at trial; indeed, the officer who took that statement never testified. Therefore, the lack of an adverse inference could not have prejudiced defendant because, quite literally, there was nothing from which the jury could adversely infer. Had counsel requested a negative inference, such request would have been

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1006-24

futile and cannot support a claim for ineffective assistance of counsel. See State v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel."). Moreover, nothing substantiates defendant's assertion that the proceedings would have culminated differently if a negative inference was given to the jury.

## C.

Defendant also alleges his counsel's decision not to cross-examine E.M. was not only ineffective assistance of counsel, but a violation of the Confrontation Clause as well. See Crawford v. Washington, 541 U.S. 36, 61 (2004). Defendant further alleges, in attempting to show that the result would have been different if E.M. was cross-examined, that E.M. "may have provided information as to who may have told him to make sex allegations." We disagree.

Although defendant's counsel elected not to cross-examine E.M., the inconsistencies between E.M.'s statements to Detective Kahn and his trial testimony were raised by counsel in closing arguments. The failure to cross-examine E.M. gives rise to an inference that this decision was within the realm of trial strategy. "'[A]n otherwise valid conviction will not be overturned merely because defendant is dissatisfied with his or her counsel's exercise of judgment during the trial.'" State v. Echols, 199 N.J. 344, 358 (2009) (quoting State v.

A-1006-24

Castagna, 187 N.J. 293, 314 (2006)); see also State v. Bey, 161 N.J. 233, 251 (1999) ("Merely because a trial strategy fails does not mean that counsel was ineffective."). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The PCR court must not focus on the defendant's dissatisfaction with counsel's "exercise of judgment during the trial . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." Castagna, 187 N.J. at 314.

Defendant does not prove prejudice and presents merely a bald assertion. See State v. Jones, 219 N.J. 298, 311-12 (2014). In attempting to overcome this presumption, defendant relies on mere speculation regarding what E.M. "may" have said if he were cross-examined. Counsel's strategy to address the inconsistencies in closing and not address them in cross-examination was sound and focused on the State not meeting their burden while avoiding the unfavorable optics of cross-examining an alleged child sexual assault victim. Based on the entire record, defendant has failed to prove his counsel's performance was deficient.

A-1006-24

D.

Defendant also asserts that his counsel was ineffective at sentencing for failing to: (1) point out the applicable mitigating factors; and (2) highlight the court's overvaluing of certain aggravating factors. We cannot analyze this contention as defendant has failed to provide the transcript from the resentence.

Our review is typically limited to the record on appeal—i.e., what is contained in the appendices and transcripts. Rendine v. Pantzer, 276 N.J. Super. 398, 426 (App. Div. 1994), aff'd 141 N.J. 292 (1995); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:6-1 (2026); Id. at cmt. 1 on R. 2:5-4 (2026). Moreover, failing to provide the relevant transcripts of defendant's resentencing runs afoul of Rule 2:5-1(g), Rule 2:5-3, Rule 2:5-4(a), and Rule 2:6-1(a)(1). Accordingly, we are not "obliged to attempt review of an issue when the relevant portions of the record are not included." Community Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (citing Soc'y Hill Condo. Ass'n. v. Soc'y. Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002) and then citing Johnson v. Schragger, 340 N.J. Super. 84, 87 n.3 (App. Div. 2001)). Thus, defendant's failure to provide the necessary transcripts, and subsequently his failure to formulate a sufficient record, is fatal to his assertions. See Cipala v.

24

Lincoln Tech. Inst., 179 N.J. 45, 55 (2004) (declining to review part of appellant's claim for failure to provide the relevant transcripts); State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2012) (declining review where defendant failed to provide a sufficient record); State v. Cordero, 438 N.J. Super. 472, 489 (App. Div. 2014) (finding it impossible to fully assess prejudice where defendant failed to provide an adequate record).

### E.

Finally, we are not persuaded by defendant's arguments in his self-represented supplemental briefs. First, defendant's claims are bald assertions. For example, defendant argues his counsel was ineffective for failing to introduce a November 2016 unsigned letter as evidence. Inexplicably, defendant only provides the second page of the letter; but alleges "this letter presents the animosity [C.M.] held against this defendant." This letter is clearly hearsay and there is no proof that it was given to his counsel before trial. Defendant also asserts, without evidence or certifications, his brothers should have been called as they would have provided "exculpatory evidence" and "verify that [C.M.] told them nothing." Defendant only speculates as to what these potential witnesses would have testified and therefore cannot show that

A-1006-24

but for the decision not to call these witnesses, the outcome of the trial would have been different.  Strickland, 466 U.S. at 694.

Next, defendant contends he received ineffective assistance of counsel because his "Affidavit of Truth" was not presented at trial.  This "Affidavit of Truth," was handwritten by defendant, alleges he has hypogonadism and erectile dysfunction, and provides contact information for his doctor.   Defendant's "Affidavit of Truth" is an inadmissible, self-serving statement.  The exclusion of this self-serving statement, particularly where the testimony against him was so overwhelming, did not prejudice defendant.

Defendant further contends his counsel failed to adequately investigate his case, including:  (1) the alleged lack of TV or internet access in defendant's room at the Vineland home; (2) discrepancies in the clothing the children were allegedly wearing on September 26, 2016; (3) whether pornographic material was present in defendant's room; and (4) whether, given the dimensions of defendant's room and bed, the sexual acts described with the dolls was possible.

We have held that "inadequate pre-trial investigation may form the basis of an ineffective assistance of counsel claim."  State v. Russo, 333 N.J. Super. 119, 139 (App. Div. 2000).  However, "when a petitioner claims [their] trial attorney inadequately investigated [their] case, [petitioner] must assert the facts

26

A-1006-24

that an investigation would have revealed, supported by affidavits or certifications." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170). Defendant does not support his inadequate investigation claims with affidavits or certifications; instead, he proffers only bald assertions. Accordingly, these speculative bald assertions are insufficient to support a PCR petition. Cummings, 321 N.J. Super. at 170; Porter, 216 N.J. at 356-57; R. 3:22-10; see also State v. Mitchell, 126 N.J. 565, 579 (1992) (holding a defendant must allege specific facts that "provide the court with an adequate basis on which to rest its decision").

Defendant's remaining arguments are barred by Rule 3:22-4 and Rule 3:22-5 because they could have been raised on direct appeal. Moreover, his claims do not fall within any other exception under Rule 3:22-4 because no fundamental injustice occurred and the denial of relief was not "contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey." Rule 3:22-4(a). Moreover, because we conclude that defendant has not established a prima facie case of ineffective assistance of counsel, an evidentiary hearing was not warranted. See Nash, 212 N.J. at 540; Preciose, 129 N.J. at 462.

A-1006-24

To the extent we have not addressed any other arguments raised by defendant, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1006-24